MILTENBERGER *et al.*, *Appellants*, v. MILTENBERGER.

1. **Wills**: PROOF OF EXECUTION. The evidence offered in support of a paper propounded as a will showed that it was written in a language not understood by the supposed testatrix; that the witnesses attested not at her request, but at the request of one of the legatees; and that she neither said nor did anything, nor was anything said or done in her presence, which indicated that she knew she was making a will. *Held*, that the execution of the paper as a will was not proven.

2. ———: ———: WITNESSES. A legatee whose interest as such in the establishment of a will still continues, will not be allowed to testify to its due execution, notwithstanding he may not have signed as an attesting witness. The statute only disqualifies him in express terms in the case in which he has so signed, but it would defeat the

manifest policy of the statute to allow him to testify when he has not so signed.

Appeal from St. Louis Court of Appeals.

AFFIRMED.

Chas. E. Pearce and Hermann & Reyburn for appellants.

Overall & Judson for respondents.

HENRY, J.—This is an action under the statute to establish a certain paper as the last will of Theresa Miltenberger, which was rejected by the probate court. Plaintiffs allege that the will was executed by the deceased, August 22nd, 1873. She died leaving five children, and by the said will, except $1 to each of the other children, bequeathed all her property to the plaintiffs Pauline and Elise. The answer denied that the paper in question was the last will of the deceased. A trial by jury was waived and the court found that the paper was the last will of the deceased, and, on appeal to the St. Louis court of appeals, the judgment was reversed, and plaintiffs have appealed to this court.

The subscribing witnesses to the paper, Barney Northoff and his wife Mary, were examined as witnesses for plaintiffs, 1. WILLS: proof of and testified that the deceased was eighty execution.                 years of age, understood the German and French languages, but was unable to read, write or speak English, in which latter language the will was written; that at the request of one of plaintiffs, they went to the house of the deceased to witness her will. Neither of the witnesses could testify to any declaration of the deceased, or any act on her part, except that of signing the paper, or any declaration in her presence and hearing indicating that she knew the contents of the paper, or that she signed it as her last will and testament. Mr. Northoff testified that he signed it first as attesting witness, and that deceased signed it after he and his wife had both subscribed their names as attesting

witnesses. There is on this point a conflict between his testimony and that of his wife, who stated that when she went over, at the request of Elise, she saw the old lady in the kitchen, writing her name, and that she signed her name as attesting witness after her husband subscribed it, and saw no one sign it afterward. Neither of the attesting witnesses testified in relation to the sanity of the old lady, or her capacity to make a will.

So far there was not sufficient proof of the execution of the will by Theresa Miltenberger. It was written in a language she could not read, attested by witnesses not at her request, but at the request of one of the legatees. She said nor did anything, nor was anything said or done, in her presence, which indicated that she knew she was making a will.

Mr. Redfield in his work on Wills, says: "There can be no question that persons incapable of reading, whether from defect of sight, or want of instruction, or sickness, or other causes, require that instruments to be executed by them in the presence of witnesses, should be read over, in the presence of the witnesses and of the person executing them, in order to afford the fullest assurance of the execution being understandingly done." Vol. 1, p. 534. But he says that: "All that is requisite in such cases is, that the proper communication be made from the testator to the witness, so that they may be able to depose to the act being understandingly done." Ib. See also Williams on Ex., vol. 1, 312; Jarman on Wills, vol. 1, 64 and note 6.

Ordinarily when witnesses are called by one to attest a paper which he has signed, they need not know its contents or be able to testify that the party signing it comprehended it. If attesting witnesses testify that the party signing the paper requested them to attest it, this, in an ordinary case, would be *prima facie* evidence that he knew its nature, and comprehended its contents, but in case of a will, if such party be blind, or as in this case extremely old, and ignorant of the language in which the paper is written, there must be

some evidence that she knew she was executing a last will and testament, especially so when by the will she disinherits three of her five children, none of whom are present at the preparation or execution of the will, except the two favored by it, who called in the attesting witnesses, and were the chief actors in the sickening scene.

Our statute requires that every will "shall be attested by two or more competent witnesses subscribing their names 2. ——: ——: wit- to the will in the presence of the testator." nesses.        The proponents of the will introduced themselves as witnesses, and, over defendants' objections, were permitted to testify that Pauline said, in a loud distinct voice, speaking in the German language in the presence and hearing of her mother and the attesting witnesses, " This is my mother's will. She gives to my sister Elise and me all what she has, and she wants us to help Charley, if he should be in need of it," and that her mother said, " You will help Charley if he should be in need of it," and then signed the will. As all the persons present understood and conversed in the German language, if these legatees were competent witnesses to prove the facts testified to by them, the execution of the will was proved. Were they competent for that purpose?

Section 36, Wagner's Statutes, 1369, provides that: " If any person has attested, or shall attest the execution of any will, to whom any beneficial devise, legacy      *      * shall be given, such devise, legacy      *      *      shall, so far only as concerns such person attesting the execution of such will, or any person claiming under him be void, and such person shall be admitted as a witness to the execution of such will." Section 38 provides that: " If the execution of such will be attested by a sufficient number of other competent witnesses, as required by this chapter, then such devise, legacy, etc., shall be valid." Section 40 is as follows: " If any person has attested, or shall attest the execution of any will, to whom any legacy or bequest is thereby given, and such person, before giving testimony concerning the

·execution of such will, shall have been paid, or have accepted or released, or shall refuse to accept such legacy or bequest upon tender thereof, such person shall be admitted as a witness to the execution of the will."

It was manifestly the object of these sections to exclude as witnesses to the formal execution of the will, devisees and legatees, while their interest as such should ·continue, and to provide, for proof of that fact, wholly disinterested witnesses. Legatees and devisees are not allowed to be attesting witnesses while their interest as such continues, and the policy of the law, as indicated in those sections, would be entirely frustrated if they should be permitted to prove the execution of the will because they had not signed it as attesting witnesses. It would be difficult to assign a reason why they should not testify to the execution of the will signed by them as attesting witnesses, and yet be admitted to testify to precisely the same facts if their names do not appear as attesting witnesses.

Section 1, Wagner's Statutes, 1372, which provides that "no person shall be disqualified as a witness in any ·civil suit or proceeding at law or in equity by reason of his interest in the event of the same as a party or otherwise," has never been construed as repealing sections 36, 38 and 40 of the act in relation to wills, or either of them. Both acts were retained in the revision of 1879, and must receive such a construction, as that both may stand, unless there is an irreconcilable conflict between them. No such conflict exists. The sections of the act in relation to wills, may be read as exceptions to section 1 of the act in relation to witnesses, and this admits legatees and devisees to testify in any issue in a case of contest, except that in relation to the formal execution of the will.

In *Garvin v. Williams*, 50 Mo. 213, the legatees were not called to prove or disprove the execution of the will, but testified only in relation to undue influence alleged to have been exercised by them over the testator to procure its execution. There was no controversy in relation to the

formal execution of the will. So in *Gamache v. Gambs*, 52 Mo. 287, the execution of the will was proved and the legatee was offered as a witness, for what purpose the record does not disclose, and, on a general objection to his competency, was excluded. Those cases and what is herein announced are not in conflict.

The judgment of the court of appeals is affirmed. All concur, except RAY, J., who dissents.