*Constitutional Question.*

---

IDA CARLSON et al., Plaintiffs in Error, v. FRED LAFGRAN et al.

Division One, May 31, 1913.

1. **WILL CONTEST: Sufficiency of Evidence.** Evidence in a suit contesting a will *held* sufficient to support a verdict for the proponents.

2. ————: **Undue Influence: Instructions.** There was some evidence in a suit to contest a will tending to show the following facts: ‧Lafgran, the residuary legatee, was not related to the testator by either blood or marriage, but had lived near him for many years and had worked for him at times and was aiding him to some extent during the early days of his ‧last illness; a short time before the will was executed Lafgran took the tes-

tator to his own home, the latter's condition having become such that he could not care for himself; at this time the testator was very sick, his wife had died some ten days before, he was seventy-five or eighty years old and quite feeble, both in body and mind, before he became ill; from the time of his removal to Lafgran's home until the will was made and thenceforward until his death he was cared for in Lafgran's family, though there was no evidence that Lafgran personally waited upon him; on the morning of March 16 Lafgran sent for Backland, Uttenberg and Fly, the two former being attesting witnesses and the latter the scrivener who drew the will; while the will was being prepared Lafgran was in the room with the testator and upon the latter's saying he would keep some of his property as he would need it when he got well there was some evidence that Lafgran went to the bedside and explained in the Swedish language that the will would not operate like a deed but would only take effect at death; that while the will was being drawn and after Backland had talked with the testator for some time in Swedish and had said that he "couldn't drive nothing into his head," Lafgran went to the bedside and talked with Mr. Johnson and said, "Didn't you promise you would give me a lot to bring you here and take care of you?" and the testator said: "Yes, I want you to have something for taking care of me;" that Backland touched Lafgran on the shoulder and told him he mustn't talk that way and Lafgran replied: "I was telling him what I ought to have;" that Lafgran then told the scrivener what to write. The estate was worth, above debts and funeral expenses, about $3000, and of this Lafgran was given all but $700, of which sum plaintiffs, who are the testator's nephews and nieces and only living relatives, were given $100 each. There was some evidence that plaintiffs were and had been on friendly terms with their uncle. *Held*, that this evidence was sufficient to take the issue of undue influence to the jury, and an instruction was erroneous which directed a verdict in case the jury found certain facts, but entirely ignored the issue as to undue influence.

3. ————: **Testator's Understanding of English: Instructions.** Where there was substantial evidence on both sides of the question whether the testator understood English well enough to grasp the meaning of the instrument he signed and whether in fact he did understand that instrument and understand it to be a will and that he was executing it as his will, instructions given for the plaintiffs were erroneous which did not require the jury to find that as a fact the testator did so understand, before they could render a verdict for the proponents; and instructions given at the instance of the plaintiffs which sufficiently required a finding of this fact only tended to confusion.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*I. V. McPherson, P. H. Harris* and *Edward J. White* for plaintiffs in error.

(1)   The court erred in refusing the demurrer asked at the close of the proponents' evidence.   (a) There was no proof of testamentary capacity on the part of the alleged testator as required by the statute, R. S. 1909, sec. 535; there was no proof of execution of the will.   Cowan v. Shaver, 197 Mo. 208; Cash v. Lust, 142 Mo. 630; Crumm v. Crumm, 231 Mo. 626; Gibony v. Foster, 230 Mo. 106; Winn v. Grier, 217 Mo. 420. (b)   There was no proof of a request expressed or implied by the testator that his will should be attested, and that in pursuance of such request the signatures of the witnesses were affixed to the alleged will in his presence.   Hughes v. Rader, 183 Mo. 630; Hach v. Rollins, 158 Mo. 190; Avaro v. Avaro, 235 Mo. 424.   (c) The alleged will was unreasonable and unnatural and very slight evidence was sufficient to warrant the conclusion of incompetency or undue influence.   Muller v. Hospital Ass'n, 5 Mo. App. 390, 73 Mo. 342.   (d)   One subscribing witness, Bachland, testified that he could not make him understand the nature of his will, and did not know whether he had explained it to him after he had dictated the will or not.   The other subscribing witness, Uttenberg, testified that he did not believe he understood the nature of the will and quoted the Swedish language which he used to say that he had nothing to give away.   This witness also stated that after attempting to make the alleged testator understand, Bachland came back and said, ''he couldn't make him understand.''   (e)   The deceased was 80 years old, under-

stood the Swedish language, but was unable to read or write English, in which language the will was written. Neither witness to the will testified to any declaration of the decedent, or any act on his part except that of touching the pen, and no declaration in the presence of either witness was testified to, indicating that the deceased knew the contents of the paper or that he intended to execute it as his last will, but all the evidence taken together proves the deceased was ignorant of the nature of a will. This instrument fixed up in such a manner and under such conditions was not the legal will of the alleged testator. Mittenberger v. Mittenberger, 78 Mo. 29; 1 Redfield on Wills, p. 534; 1 Jarman on Wills, 64. (2) The court erred in giving instructions 1 and 2 on behalf of the proponents. The first instruction submitted the case to the jury as though the attesting witnesses had ascertained that the deceased had sufficient intelligence to understand the act he was performing, the property he possessed, the disposition he was making of it, and the persons and objects he was making the beneficiaries of his bounty; whereas, the evidence of the two attesting witnesses, and all the others present when the alleged will was executed, was directly to the contrary. The second instruction was predicated upon the theory that the deceased had himself sent for the subscribing witnesses, and that the will had been read over to the testator before he signed it, or made his mark; whereas, the uncontradicted evidence was that the will was not read over to the testator in the Swedish language at all, but was only read over by the scrivener, in the English language, and that the testator could not understand the English language at all, and that he had not sent for these persons to witness his will because he was ignorant of the nature of a will. Both of these instructions, therefore, were based upon conditions not shown to exist in the concrete case before the court and hence were clearly error, because there was no evidence upon which to base them. (3) The

court erred in refusing the plaintiff's instruction numbered eight. The plaintiffs' instruction 8 was based upon the undue influence of the defendant, Fred Lafgran, a stranger to the deceased, who went to his little home after his wife's death and loaded him into a wagon and took him to his house a week or so before he died. The evidence was to the effect that he had importuned the deceased in a threatening manner to leave him his property in consideration of his taking care of him until he died, and he was then in a helpless and hopeless and dying condition. This was sufficient evidence to base the instruction upon, and it should have been given. The evidence showed a confidential relation existed between Fly and testator and between the testator and Lafgran. Campbell v. Carlisle, 162 Mo. 634.

*Wliliam B. Skinner* for defendants in error.

(1) When a will is contested it devolves upon the proponents to prove its execution and that the testator was of the requisite age and sane. This makes a *prima facie* case and it then devolves on the contestants to establish his incompetency and undue influence. By competency to make a will is meant intelligence sufficient to understand the act he is performing, the property he possesses, the disposition he is making of it and the persons or objects he makes the beneficiaries of his bounty. Imperfect memory caused by sickness or old age, forgetfulness of names of persons he has known, idle questions, or requiring a repetition of information will not be sufficient to establish incompetency, if he has sufficient intelligence to fulfill the above definition. Sehr v. Lindemann, 153 Mo. 276; Winn v. Grier, 217 Mo. 446; Hughs v. Rader, 183 Mo. 630; Gibony v. Foster, 230 Mo. 131. (2) Where the evidence showed that witnesses are present for the purpose of attesting a will, that the will is prepared in the presence of the

testator, that it is read to him and he signed it, and it is then passed to a table in the same room, and there, in the presence of the testator and of each other, the witnesses sign it, such acts constitute, in effect, a request from the testator to sign it, and the mere fact that one of the beneficiaries requested the attendance of the witnesses, and that the testator does not proclaim the paper to be his last will and testament, nor verbally request the witnesses to attest it, are not sufficient to annul the will on ground of non-compliance with the statute. Hughes v. Rader, 183 Mo. 630; Martin v. Bowdern, 158 Mo. 389; Schierbaum v. Schemme, 157 Mo. 1. (3) "There is not much contrariety of opinion in the courts as to what constitutes undue influence, such as will vitiate a will. It must constitute an influence exerted *male fide* to produce a result which the party, as a reasonable person, was bound to know was unreasonable and unjust, and it must have the effect of producing illusion or confusion in the mind of the testator, so as to either overcome free agency, or power of judging upon the true relationships between himself and those who might be supposed to have just claims upon his bounty. It must not be such as arises from influence of gratitude, affection or esteem, but it must be the control of another will over that of the testator, whose faculties have been so impaired as to submit to that control, so that he has ceased to be a free agent, and has quite succumbed to the power of the controlling will." Carl v. Gabriel, 121 Mo. 296; Campbell v. Carlisle, 162 Mo. 646; Hughes v. Rader, 183 Mo. 633. "In order to authorize the submission of the question of undue influence to the jury there should be at least some substantial and satisfactory proof that the will was procured by coercion and importunity which could not be resisted and that by such coercion and importunity the execution of the will was procured." Winn v. Grier, 217 Mo. 460. "The influence denounced by the law must be such as amounts to overpersuasion,

coercion or force, destroying the very agency or will power of the testator and substituting therefor the will of another." Hughes v. Rader, 183 Mo. 633. "Influence gained by kindness and affection will not be regarded as undue, if no imposition of fraud is practiced, even though it induce the testator to make an unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made." Campbell v. Carlisle, 162 Mo. 647. "It would be a great reproach to the law, if, in its jealous watchfulness over the freedom of the testamentary disposition, it would deprive age and infirmity of the kindly ministrations of affection, or the power of rewarding those who bestow them." Campbell v. Carlisle, 162 Mo. 647.

BLAIR, C.—This is a proceeding instituted by the heirs at law of Nels Johnson to contest the validity of an instrument purporting to be and duly probated as his will. From a verdict and judgment for proponents plaintiffs appealed.

Will Contest.

The petition alleges that (1) Johnson lacked testamentary capacity, (2) the will was the product of undue influence and (3) Johnson did not understand English and did not sign the instrument "as and for his will, understanding and knowing the terms and contents thereof."

On the trial there was ample evidence warranting a verdict in favor of the will, but there was also evidence for plaintiffs tending to prove the allegations of the petition.

The principal question presented concerns the correctness of instructions given for proponents, as follows:

"Gentlemen of the Jury: (1) If you find and believe from the evidence that the instrument of writing mentioned in the petition and offered and read in evi-

dence in this case was signed by Nels Johnson by making his mark thereto, as his will, in the presence of two witnesses and that the witnesses subscribed their names to such instrument, in his presence and at his request and that at the time of signing such instrument of writing said Nels Johnson was twenty-one years old or more and had at such time intelligence and mind sufficient to understand the act he was performing, the property he possessed, the disposition he was making · of it, and the persons and objects he was making the beneficiaries of his bounty, then your verdict should be that such instrument of writing is the will of said Nels Johnson.

"(2)  The court instructs the jury that if you find from the evidence that the witness Bachland and Uttenberg were sent for by Nels Johnson, the testator, to act as witnesses to his will, and that they were present in the room where the will was written for the purpose of witnessing it, that such will was written and prepared in the presence of said witnesses and said testator, and read over to said testator and he said he was ready to sign it and he did sign it by making his mark to his signature in the presence of said witnesses and it was then passed over to the said witnesses Bachland and Uttenberg and the certificate on such will they were required to sign was read over to them in the hearing of said testator and in his presence and the witnesses there in the room in the presence of the testator, signed their names to the will where they were directed and shown by Mr. Fly, then such acts constitute, in effect a request from said Nels Johnson the testator that such witnesses sign the will and you should so find."

1.  Preliminarily it may be stated that the suggestion the evidence does not support the verdict has not sufficient basis in the record to justify a detailed statement of the facts. The scrivener, the attending physician, one of the attesting witnesses and others testified directly to

Sufficiency of Evidence.

the sanity of Mr. Johnson. The evidence to the contrary, while sufficient to take the case to the jury on that issue, was not convincing and it is not surprising it did not convince the jury. There was direct evidence to support a finding that the will was duly signed, published and attested; the testator being of the requisite age, this made a *prima facie* case. [Avaro v. Avaro, 235 Mo. 1. c. 429.] The fact that one of the attesting witnesses expressed doubts as to Mr. Johnson's sanity and did not remember being expressly requested to attest the will was of little consequence in view of the above mentioned testimony and the further fact that there was much evidence tending to show that Mr. Johnson sent for the witnesses for the express purpose of making a will, that in the presence of the witnesses he directed the disposition made of his property in the instrument, had the witnesses act as interpreters, the discussion concerning the will being carried on in a language the witnesses fully understood and the instrument being read over to him in their presence he said he was ready to sign and did sign it, understandingly, and it was then handed to and attested by them in his presence. When the instrument was offered for probate both witnesses gave the customary evidence as to due execution and the sanity of the testator. In these circumstances subsequent doubts of one attesting witness as to Mr. Johnson's sanity and his failure to recall an express request to attest the will fall far short of a showing sufficient to justify the trial court in directing a verdict against the will. [Hughes v. Rader, 183 Mo. 1. c. 701, et seq.]

It may be added that while there was some evidence Mr. Johnson did not understand English sufficiently to comprehend the meaning of the instrument after it had been drawn up in that language, there was abundant evidence that he did understand its meaning and that it was drawn following directions he had given in

Swedish to the attesting witnesses which they interpreted for the benefit of the scrivener.

2. (a) With respect to the first instruction it directs a verdict in case the jury find certain facts but, entirely ignores the issue as to undue influence.

There was some evidence tending to show the following facts: Lafgran, the residuary legatee, was not related to Mr. Johnson by either blood or marriage but had lived near him for many years and had worked for him at times and was aiding him to some extent during the early days of his last illness; a short time before the will was executed Lafgran took Mr. Johnson to his own home, the latter's condition having become such that he could not care for himself; at this time Mr. Johnson was very sick, his wife had died some ten days previously, he was seventy-five or eighty years old and quite feeble, both in body and mind, before he became ill; from the time of his removal to Lafgran's home until the will was made and thenceforward until his death he was cared for in Lafgran's family, though there was no evidence that Lafgran personally waited upon him or acted as his nurse; on the morning of the 16th of March Lafgran went for Backland, Uttenberg and Fly, the two former being attesting witnesses and the latter the scrivener who drew the will; during the time the will was being prepared Lafgran was in the room with Mr. Johnson and upon the latter's saying he would keep some of his property as he would need it when he got well there was some evidence Lafgran went to the bedside and explained in the Swedish language that the will would not operate like a deed but would only take effect at death; that while the will was being drawn and after Backland had talked with Mr. Johnson for some time in Swedish and had said that he "couldn't drive nothing into his head," Lafgran went to the bedside and talked with Mr. Johnson and said, "Didn't you promise you would give me

*Margin note: Undue Influence: Instructions: Evidence.*

a lot to bring you here and take care of you?'' and Mr.
Johnson said: ''Yes, I want you to have something for
taking care of me;'' that Backland touched Lafgran on
the shoulder and told him he mustn't talk that way and
Lafgran replied:. ''I was telling him what I ought to
have;'' that Lafgran then told the scrivener what to
write.    There was, also, evidence Mr. Johnson at the
time was mentally as well as physically weak and
·feeble.

The estate was worth, above debts and funeral ex-
penses, about $3000, and of this Lafgran was given all
but $700, of which sum plaintiffs, who are Mr. John-
son's nephews and nieces and only living relatives,
were given $100 each.    There was some evidence plain-
tiffs were and had been on friendly terms with their
uncle.

It is true there was a great deal of evidence con-
tradicting and explaining that recapitulated in so far
as it possessed any sinister significance what-
ever, but this fact does not constitute an an-
swer to the contention that the evidence stated
was sufficient to take the issue of undue influence to the
jury.    It may be conceded that the weight of the evi-
dence seems from the record to be with proponents and
yet this does not meet the question raised.    That ques-
tion is not whether this court thinks it would find
against undue influence on this record nor whether,
from the record, it thinks the jury ought to have found
against it if the issue had been properly submitted.    In
legal effect the trial court's action was equivalent to
telling the jury there was no substantial evidence of
undue influence which they had a right to believe and
equivalent to instructing them to find for proponents
on that issue.    [Crum v. Crum, 231 Mo. l. c. 636.]
Plaintiffs had not abandoned but were insisting upon
the submission of the issue and it is clear, when the evi-
dence stated is measured by the applicable rule (Carl
v. Gabel, 120 Mo. l. c. 295, et seq.; Teckenbrock v. Mc-

Question
for Jury.

Laughlin, 209 Mo. l. c. 550, 551; Gibony v. Foster, 230 Mo. l. c. 137; Cowan v. Shaver, 197 Mo. 203) that the court was in error in ignoring it and practically excluding it from the jury by the first instruction given at proponents' instance. It was the jury's province to pass on the conflicting evidence on the issue of undue influence and this the trial court did not permit them to do. Since every known living relative of Mr. Johnson was made a legatee the requirement in the first instruction that he must be found to possess sufficient mental capacity to understand "the persons and objects he was making the beneficiaries of his bounty" closely enough approximated the usual and therefore safer formula.

(b) There was substantial evidence on both sides of the question whether Mr. Johnson understood English well enough to grasp the meaning of the instrument he signed and Testator's Understanding of English. whether, in fact, he did understand that instrument and understand it to be a will and that he was executing it as his will when he signed it and it was attested. The evidence was entirely sufficient to warrant an affirmative finding, but there was substantial evidence to the contrary. In view of this fact instructions one and two in so far as they ignored this last mentioned evidence are erroneous. In the circumstances, a mere capacity to understand was not all that was required. The jury should have been required to find that as a fact Mr. Johnson did understand. Nor, in the circumstances, unless he in fact understood, would the facts predicated in the second instruction have the effect ascribed to them. The rule laid down in Hughes v. Rader, 183 Mo. l. c. 701, et seq. and Walton v. Kendrick, 122 Mo. 504, is sound enough but does not, on the evidence in this record, warrant an assumption in the instructions that Mr. Johnson understood the will as written in English. [Miltenberger v. Miltenberger, 78 Mo. 27.] In this connection instructions given at the instance of plaintiffs sufficiently required a finding of

the fact that Mr. Johnson did understand the will but the result was a conflict which could only tend to confusion.

3. So far as concerns the suggestion that Mr. Johnson's intent was that Lafgran's right to take under the will should be conditioned upon his paying over a specified sum to an orphan's home it is only necessary to say that the sixth instruction given for plaintiffs sufficiently covered that issue. [Cowan v. Shaver, 197 Mo. l. c. 212, et seq.]

The judgment is reversed and the cause remanded. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur—*Woodson, J.,* in the result.