## MANN v. BALFOUR, Appellant.

Division One, March 15, 1905.

1. **WITNESS: Untimely Objection.** A party who permits evidence which he considers incompetent to be introduced without objection (if an opportunity to object is afforded him), can not, after he discovers that it is against him, have it excluded on motion.

2. **WILL: Competency of Legatee: General Objection.** A legatee in a suit to establish a lost will and its contents is not incompetent for all purposes; and although she may be incompetent to prove its execution, a general objection that she should not be permitted to testify at all should be overruled.

3. ———: ———: **Party in Interest.** The fact that a legatee is interested in the establishment of a will, does not disqualify her from being a witness in her own behalf.

4. ———: **Correction: Derivative Jurisdiction.** In a contest to establish a lost will, it was agreed that the will covered all the estate of whatever character and of whatever description, and plaintiff in his petition alleged that the contents of the will were substantially set forth in an exhibit, which erroneously described land as the northwest quarter instead of the northeast

quarter, and this error the court permitted plaintiff to correct after the case reached the circuit court. *Held*, that the amendment was immaterial and that the jurisdiction of the circuit court was not ousted because the exhibit when the case was heard in the probate court contained the same misdescription.

5. **LOST WILL: What Testator Says About It.** Where substantial evidence has been adduced to show the due execution of the will, that it has been lost, that it was not revoked, and its contents, it is then permissible to prove in corroboration of the other evidence what the testator himself said about those things.

6. ————: **Signature and Mark.** It makes no difference whether with her own hand the testatrix signs her name or adopts the signature written by some one else by making her mark; in either case it is, in legal effect, a signing.

7. ————: **Destruction by Legatee: Impeachment.** A witness testified that a legatee told her that her sister had cried about the will, and that to appease her she had destroyed it, and the court hold the jury that this was no evidence that the will had been destroyed, but that it was to be considered only in the way of impeaching the testimony of the legatee, who had testified as to its execution, contents, loss and its non-revocation. *Held*, correct. The legatee could not destroy the will; that could be done only by the testate.

8. ————: **Revocation.** After the will was executed, testatrix gave it to her husband and asked him to have it recorded and gave him the money to pay for recording it and he and a daughter started to town for that ostensible purpose, and afterwards testatrix told a witness that it had been recorded. *Held*, that, under the circumstances the presumption that when a will properly executed is not found among his papers after testator's death he revoked it, does not arise.

9. ————: **Division of Property: Estoppel.** The fact that after the death of testatrix the two sisters got together and agreed upon a division of the property and afterwards one of them, the legatee who is seeking to have the will established, sold her interest thus agreed upon to the other legatee, now deceased, whose husband is resisting its establishment, can not alter the legal effect of a judgment establishing the will, and does not bear on the question of whether or not a will was made or revoked or its contents. Nor did such acts of the plaintiff amount to an estoppel.

10. **MARRIED WOMAN: Limitations.** The Statute of Limitations does not bar a married woman under coverture from the time her cause of action accrued.

Appeal from Cedar Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

*James Masters* and *Howard Gray* for appellant.

(1) The plaintiff was not a competent witness to prove the execution of the will, its contents, or its delivery to be recorded; and the court erred in permitting her to so testify over the objection of the defendant, and also in refusing to strike out her testimony on motion of defendant, and also erred in refusing the instruction asked by the defendant that said testimony be excluded. Trotters v. Winchester, 1 Mo. 292; Miltenberger v. Miltenberger, 78 Mo. 27. Under the law, the plaintiff would have inherited an undivided one-half interest in the property of her mother, subject to the life estate of her father, but under the will under certain circumstances she would acquire all the property, and at the time the case was tried she testified her interest was much greater under the will than if the same was rejected. Graham v. O'Fallon, Exr., 4 Mo. 338. (2) The circuit court possessed no original jurisdiction in this cause and was only authorized to proceed upon the theory that a certain will had been presented to the probate court for probate and that the probate court had rejected the same. The evidence shows that the will presented to the probate court and the one sought to be established in the circuit court described entirely different tracts of land and fully shows that the probate court did right in rejecting the will presented to it. Lilly v. Tobbein, 103 Mo. 477; Cox v. Cox, 101 Mo. 168; Stowe v. Stowe, 140 Mo. 594; State ex rel. v. Guinotte, 156 Mo. 513. The fact that a certain will is presented to the probate court and rejected, does not authorize a proceeding in the circuit court to estab-

lish a different will.  (3)  The testimony of Mrs. Emma Goodwin was not admissible.  She testified that some time after the execution of the will she had a conversation with the testatrix in which she said she had made a will and told the witness its contents.  Walton v. Kendrick, 122 Mo. 504; Gibson v. Gibson, 24 Mo. 234; Schierbaum v. Schemme, 157 Mo. 1.  (4)  The first instruction given in behalf of the plaintiff implies that there was evidence in the case that Elizabeth Pankey signed her will.  There was no such testimony, and the only question was whether Mrs. Mann signed the testatrix's name to the will with the consent of the testatrix. Girdner v. Gibbons, 91 Mo. App. 412.  (5)  The fourth instruction given by the court in behalf of the plaintiff is highly prejudicial.  Mary Pankey had testified that the plaintiff told her that she had destroyed the will, and the court by this instruction said that that was no evidence that the plaintiff had destroyed the will. The declaration of a person against his own interest is always presumed to be true.  Mrs. Mann had testified that the last she saw of this will was when it was given to her father to be recorded.  This testimony tended to prove that she had destroyed the will and that it was not given to the father and sister of plaintiff to be recorded.  (6)  The demurrer to the evidence should have been sustained. There was no testimony that Mrs. Pankey ever signed any will or ever asked any other person to sign her name to it.  The attorney, who drafted the will, and the plaintiff say that they think she signed it by mark, but as to who wrote her name to the will, or whether she asked anybody to do so, there is absolutely no evidence.  Girdner v. Gibbons, 91 Mo. App. 412. Section 4604, Revised Statutes 1899, requires that wills should be in writing signed by the testator, or by some person by his direction in his presence.  In this case an attempt is made to establish a will signed "Elizabeth Pankey," but no witness testified that Mrs. Pankey signed her own name, or that she requested

anybody else to sign her name, or that her name was signed by any other person, but the witnesses say that she made her mark; therefore, there was no proof in this case of the execution of any will. Girdner v. Gibbons, supra. (7) The court erred in refusing the instruction asked by the defendant limiting the evidence of the plaintiff so that the jury could not consider it as a part of the proof of the execution of the will. She was not a competent witness in this case to prove such fact or to prove that the will was delivered to Mrs. Balfour or Mr. Pankey, and it can not be said that this evidence was not prejudicial. Trotters v. Winchester, 1 Mo. 292; Miltenberger v. Miltenberger, 78 Mo. 27.

*Thomas L. Nelson* and *Cole & Burnett* for respondent.

(1) The execution of a last will and testament by Elizabeth Pankey having been established, the law presumes it continues to exist. Odenwaelder v. Schorr, 8 Mo. App. 463. (2) The probate of a will is a judicial act. "The insufficiency of the proof is no objection to the admissibility of the record of probate. . . . The law has provided a mode by which the validity may be disputed and decided. . . . A judgment of probate is like any other judgment of a court of competent jurisdiction. It must be set aside, or annulled, or reversed in the mode authorized by law. . . . It is not material upon what evidence it is based, for that is no part of the judgment." Dilworth v. Rice, 48 Mo. 131; Banks v. Banks, 65 Mo. 432; First Baptist Church v. Robberson, 71 Mo. 348. (3) The plaintiff was a competent witness at the trial of this cause. This is not a case where one of the original parties to the contract or cause of action, in issue and on trial, is dead. There was no cause of action in existence till the death of the testatrix. The controversy is between living parties. The testatrix is in no sense a party to the

original cause of action. Her act was only the subject-matter of investigation. The real question in the case is whether there is a will or not, and upon that question all the parties have a right to testify. Garvin's Admr. v. Williams, 50 Mo. 212; Gamache v. Gambs, Admr., 52 Mo. 287; Miltenberger v. Miltenberger, 78 Mo. 31; R. S. 1899, sec. 4655; Wayne Co. v. Railroad, 66 Mo. 79. (4) The objection to the testimony of Mrs. Sarah F. Mann was simply a general objection that she was an incompetent witness. She was a competent witness, and no specific objection was made to her testifying as to the execution of the will. At the close of plaintiff's case defendant moved to strike out and exclude from the jury all that part of her testimony relating to the execution of the will. Having permitted her to testify without objection, and having called upon her to further testify at great length on the subject, appellant's subsequent motion to strike out and exclude came entirely too late. Hickman v. Green, 123 Mo. 172; State v. Hope, 100 Mo. 347. And the trial court so expressly ruled. Maxwell v. Railroad, 85 Mo. 105. The incompetency of a witness may be waived. Tomlinson v. Ellison, 104 Mo. 114; Ess v. Griffith, 139 Mo. 329; Nichols v. Nichols, 147 Mo. 387. (5) A will being lost or destroyed, probate may be granted on a copy; also where there is no copy, the contents of the will may be proven and the will established by subscribing witnesses, or others who knew the contents thereof. Graham v. O'Fallon, 3 Mo. 507. The will sought to be established was lost or destroyed. The paper exhibit "A" did not purport to be a true copy of the will and the petition alleged that the will was substantially the same as said exhibit "A." In an action to establish a destroyed will, it is enough to prove the substance thereof, without proving the precise language employed. 1 Underhill, Law of Wills, sec. 274. Where a will has been lost or destroyed, probate may be made of so much thereof as can be proven. Skeggs v. Horton,

82 Ala. 352; Steele v. Price, 44 Ky. 58; Jackson v. Jackson, 4 Mo. 210. When the probate court rejected the establishment of the will, then under the statute the circuit court had jurisdiction to determine if a will had been executed and the contents thereof. Garvin's Admr. v. Williams, 50 Mo. 212; Hughes v. Burriss, 85 Mo. 665. When the case went to the circuit court after rejection of the will by the probate court, the effect of plaintiff's petition and the proceedings under it was to transfer the whole matter to the circuit court. Hughes v. Burriss, 85 Mo. 665; Lilly v. Tobbein, 103 Mo. 489; State ex rel. v. Guinotte, 156 Mo. 221. And under the practice act the correction as to the description of the land was permissible and proper. R. S. 1899, secs. 602, 655, 659, 656, 657, 672, 673. (6) The testimony of Mrs. Emma Goodwin was admissible as supplementary proof in establishing the contents of the will. 1 Underhill, Wills, sec. 277; In re Lambri's Estate, 97 Mich. 49; 1 Jarman on Wills, p. 290. In a suit to establish a lost will, secondary evidence of the existence and contents of the will is admissible; and the declarations of the testator concerning the will may be shown, as well to establish its contents as to show the probability or improbability of its destruction by him. Southworth v. Adams, Fed. Cas. No. 13194; Conley v. Gayle, 61 Ala. 116; McDonald v. McDonald, 142 Ind. 55; In re Valentine's Will, 93 Wis. 45. (7) Mrs. Mann could not have revoked her mother's will. A destruction by her would not revoke the will, unless the destruction was at the request of or with the consent or authority of the testatrix. The only purpose and object of the testimony of Mary Pankey, to the effect that plaintiff had told her that she (plaintiff) had destroyed the will, was to discredit the plaintiff's testimony, by showing that she had made statements contradicting her testimony at the trial. Webster v. Enfield, 5 Gil. 298; Burton v. Railroad, 84 N. C. 192; Weir v. McGee, 25 Tex. Supp. 20. (8) The demurrer to the evidence was prop-

erly overruled. Stephens v. Stephens, 129 Mo. 422; 1 Jarman on Wills, p. 201.

VALLIANT, J.—This is a proceeding to probate a lost will. The proceeding was initiated in the probate court of Cedar county, the judgment of that court was that the instrument sought to be probated was not the will of the alleged testatrix; the plaintiff then filed her petition in the circuit court under the provisions of section 4622, Revised Statutes 1899, praying that the alleged lost will be established by the judgment or decree of that court. The petition states that the plaintiff's mother, Elizabeth Pankey, died in 1890, leaving a large amount of personal property and one hundred and twenty acres of land, in Cedar county, and leaving a will which she had duly executed, but which had been lost and could not be found to be presented for probate, but that its contents were substantially set forth in a paper presented with the petition as "Exhibit A" thereto, and made a part thereof; that the same had been offered for probate to the probate court and rejected. The exhibit was in the form of a will, as if duly executed, whereby the testatrix gave all her estate, real and personal, to her two daughters, the plaintiff and Mrs. Balfour, as tenants in common during their joint lives and at the death of either without leaving issue, the other was to have the whole estate, and on the death of either or both leaving issue, the child or children were to take their mother's share.

The sole defendant in the suit is the surviving husband of the plaintiff's deceased sister. By his answer, he puts in issue the material averments of the petition, denying that Elizabeth Pankey made a will or if she made one averring that she afterwards revoked it, and pleading affirmatively that the plaintiff was estopped from now asserting that there was such a will because after the death of her mother, more than ten years ago, she and her sister, defendant's then wife, divided the

personal property between them as if there had been no will, and the plaintiff, for the consideration of $750 then paid her, conveyed to her sister her (plaintiff's) undivided half of the one hundred and twenty acres of land which their mother died owning; the answer pleaded also the ten year Statute of Limitations.

On motion of the plaintiff all that portion of the answer pleaded as an estoppel and the Statute of Limitations was struck out, and defendant excepted.

In the exhibit filed with the petition, purporting to state the substance of the alleged lost will, the one hundred and twenty acres of land were described as the east half of the northwest quarter of section 18, township 34, range 26, and the southwest quarter of the northwest quarter of section 13, township 34, range 27, in Cedar county. Before entering into the trial, the counsel for plaintiff stated that he had discovered that there was a clerical error in the description, that instead of the east half of the northwest quarter of section 18, it should be the east half of the northeast quarter, and asked leave to correct the error by amendment, which was granted and defendant excepted; the correction was made.

At the trial the evidence for the plaintiff tended to prove as follows: In August, 1890, Elizabeth Pankey died leaving two children her only heirs, the plaintiff Mrs. Mann, and Savannah Balfour, since deceased, then the wife of defendant. A short while before her death, being an invalid, she sent for Mr. Walker, a friend of hers, to come to her to write her will; he came and at her dictation wrote a will which, after having been read to her, was then and there signed by her, either by her signature or her mark, and attested by two or more witnesses. She was then in sound mind. There were present at the execution of the will, the husband of the testatrix, who has since died, Mr. Walker, James Younger, Charles Younger and Mrs. Mann, the plaintiff. James Younger was one of the subscribing wit-

nesses to the will and either Charles Younger or Mr. Walker was the other, as to which the evidence was not certain. After the will was executed, the testatrix gave it to her husband, the father of her two daughters, and asked him to take it to the courthouse and have it recorded and gave him money to pay for recording it; he in company with his daughter Mrs. Balfour went to the county seat for that purpose. The evidence does not show what became of the will after that, the plaintiff's father and her sister both being dead at the date of the trial.

Mr. Walker could not remember the contents of the will; he only remembered that he wrote it as the testatrix dictated. James Younger, who was a brother to the testatrix and who was present when the will was written, heard it read and discussed, testified that it gave the property to the two daughters for life and if either should die leaving no child or children, her share was to go to the other.

The plaintiff as a witness in her own behalf testified to the same effect; she testified both as to the execution of the will and as to its contents. When this witness was offered the defendant objected in the words following:

"May it please the court: We object to this witness being introduced, because she is incompetent, for the reason that she is an interested party. The deceased is dead, and the heir-at-law, the other heir-at-law is dead, and she is the only surviving heir, and they being dead she can not testify against the interests of the one that is dead, and the will they seek to establish takes from the heirs of the heir-at-law, that is, it takes the property that belonged to the heir-at-law, takes it and gives it to this one, this witness, under the will, and for that reason she is incompetent to testify."

The objection was overruled and exception taken.

Charles Younger testified that he could not remember whether he was present when Mrs. Pankey made

the will; it was twelve years ago; he only remembered that she told him at one time that she was going to make a will and afterwards that she had done so.

Mrs. Goodwin, a half sister to plaintiff and step-daughter to Mrs. Pankey, testified that she remembered the circumstance of Mr. Walker coming to the house to write Mrs. Pankey's will, and that afterwards Mrs. Pankey told her that she had made a will and that it was recorded, and that the will gave the property to her two daughters, and if one died leaving no child, her share was to go to the daughter who lived and had children. To this evidence the defendant objected on the ground that it was not the best evidence, the best being the subscribing witnesses, and that testimony as to what the testatrix said after making the will was incompetent. The objection was overruled and exception taken.

The testimony also showed that Mrs. Balfour died without ever having had a child, leaving only her husband, the defendant, surviving.

At the close of the plaintiff's case the defendant offered an instruction in the nature of a demurrer to the evidence, which the court refused and defendant excepted.

The defendant as a witness in his own behalf testified to the following effect:

His wife was a daughter of Mrs. Pankey's and sister to Mrs. Mann. He and his wife were living in Carthage, and in July, 1890, information came to them that Mrs. Pankey, who was then an invalid, had made a will; whereupon, within two or three days defendant's wife went to her mother's home in Cedar county and within a few days defendant himself went there, and they two remained there waiting on her until she died, which was on August 6th. After witness arrived he had a talk with Mrs. Pankey about the will, his wife was present and Mr. Pankey; the latter had the will in his hand, and they were at the bedside of the

testatrix. The testatrix told witness that the reason she had made the will as she did was that she had heard that he had offered to sell forty acres of her land for $500; the witness assured her that such was not the truth, and then she said, that being the case she desired the will destroyed; witness then took the will from Mr. Pankey's hand and read it; as to its contents he said: "And the will gave Mrs. Mann all of the property until after my death; then my wife was to have her part. After I read the will I handed it back to father Pankey, and he took it and went into the east room, a kind of dining-room—I mean west room. Q. Well, what then? A. I heard nothing more except the conversation that occurred between us which— Q. What did Mrs. Pankey say to Mr. Pankey, if anything, before he went into the west room? A. She said she wanted that will destroyed. Q. That was in July you say? A. Well, that was I think, about the fifteenth of July. Q. What time of day was it? A. Well, I think between ten and eleven o'clock in the morning. Q. Do you know whether there was any fire in any of the other rooms or not? A. I do not. Q. Did you have any conversation with Mr. Pankey about what he did with it in the presence of Mrs. Pankey after that? A. I did not. Q. I will ask you if you had any conversation with Mrs. Mann at that time? Was she there? A. Mrs. Mann was not present. Q. You said that after Mrs. Pankey said, if such was not the case she wanted the will destroyed? A. She wanted the will destroyed, the girls should share alike."

The witness then went on to say that after the death of Mrs. Pankey, the two daughters divided the personal property equally between them and later Mrs. Mann sold her sister her half interest in the land for $750, which was paid her in cash, and the understanding then was that the deed conveyed all the interest that Mrs. Mann then had or would ever have in the land.

Mrs. Pankey owned no other land than the one hundred and twenty acres mentioned.

A witness for defendant, Mary Pankey, testified that she had a conversation with Mrs. Mann before the death of her mother, in which Mrs. Mann speaking of the will said: ''Savannah (Mrs. Balfour) has cried and cut up so much about the will, she says, I destroyed it.''

Witness also said that Mrs. Pankey had told her that she had made a will and when asked as to what Mrs. Pankey said about the contents, said: ''She said that Mrs. Mann was to have control of the property until Dr. Balfour's death, and when Dr. Balfour died Mrs. Balfour was to have her share, and if Mrs. Balfour was to die first Mrs. Mann was to have the whole thing. Now that is the way I understood it.''

There was further testimony offered by defendant relating to the sale of the plaintiff's half of the land to her sister, and plaintiff's statement that the deed would have the effect to give Mrs. Balfour title to all the land, which evidence on objection by the plaintiff was excluded.

The cause was submitted to the jury under instructions to which, in the main, there is no objection made except on the ground that there was no evidence justifying the submission of the questions as to the execution and contents of the will to the jury.

Instruction 4 given for plaintiff was to the effect that the testimony of Mary Pankey that Mrs. Mann had told her that she had destroyed the will was not evidence that Mrs. Mann did destroy it, but only evidence to impeach Mrs. Mann as a witness.

The jury returned the following verdict:

''We the jury find that Elizabeth Pankey died on the sixth day of August, 1890, leaving a will which was signed by her while in sound mind, and witnessed by James M. Younger and Charles Younger; and we further find that said will has been lost or destroyed;

and we further find that the contents of said will were in substance as follows:

"That her real and personal property be divided equally between her daughters Sarah Mann and Savannah Balfour, share and share alike while living, at the death of either leaving no heirs, her portion to revert to the other."

The judgment was in accordance with the verdict and the defendant appeals.

I.   The first point presented in appellant's brief is that "the plaintiff was not a competent witness to prove the execution of the will, its contents or its delivery to be recorded."

The objection made at the trial was that the witness was incompetent because of her interest; also because the testatrix being dead and the other heir-at-law being dead, she ought not to be allowed to testify in a proceeding the effect of which is to take the deceased heir's share and give it to herself.

The fact that one is interested does not disqualify her from becoming a witness in her own behalf. [Sec. 4652, R. S. 1899.] It was not contended at the trial and is not contended here that the witness was rendered incompetent on the theory contained in the proviso to the section above-named that where one of the parties to the original contract or cause of action in issue and on trial is dead the other party is forbidden to testify. The objection seems to rest on the ground that the witness is interested and as the other heir is dead it would be unjust to allow her to testify. And in a motion at the close of the plaintiff's case, the defendant limits his objection to so much of the witness's testimony as relates to the execution of the will. In Miltenberger v. Miltenberger, 78 Mo. 27, it was held that legatees and devisees were competent witnesses in a will contest except as to the formal execution of the will. Relying on the rule of law there laid down the defendant at the close of the plaintiff's case moved the court to

exclude that part of the plaintiff's own evidence which related to the execution of the will, but the court overruled the motion, on the ground that no objection was made to the questions asked the witness on that point and that the objection came too late. The record shows that the trial court was correct on that point; the only objection made was when the witness was offered and it went to her entire disqualification. Even if the plaintiff was not a competent witness to prove the execution of the will, she was a competent witness for other purposes. [Dickey v. Malechi, 6 Mo. 177; Gamache v. Gambs, 52 Mo. 287; Garvin v. Williams, 50 Mo. 206.] And the court therefore properly overruled the general objection. A party has no right to wait until what he considers incompetent evidence is called for and allow it to go in without objection (if an opportunity to object was afforded him) and afterwards, when he has discovered that it is against him, have it excluded on motion. There was no error in overruling the motion and for the same reason there was no error in refusing an instruction asked by defendant to the same effect.

II. Appellant's second point is that since the circuit court in such case exercises a derivative jurisdiction only, it had no jurisdiction in this case, because by allowing the plaintiff to make an amendment by correcting what was said to be a clerical error in the description of the land as given in the petition and in the exhibit to the petition filed in the probate court, the case that was passed on in the probate court was not the same case presented to the circuit court.

In the original petition filed in the probate court, it was undertaken to describe the land owned by testatrix in her lifetime and in that description a part of the land was described as the east half of the northwest quarter of section 18, but on reaching the circuit court leave was given to correct the description by writing it the east half of the northeast quarter of sec-

tion 18.   The amendment was immaterial.   The evidence of both plaintiff and defendant agreed that the testatrix owned only one hundred and twenty acres of land and the will covered all her estate of whatsoever character and of whatsoever description.   There is nothing in that point.

III.   It is insisted that the testimony of Mrs. Goodwin repeating what the testatrix said in reference to the making and recording of the will and of its contents was incompetent.   It has been held by this court that in a contest over a will, the terms can not be varied or its validity affected by testimony tending to prove what the testator said about it after its execution. [Walton v. Kendrick, 122 Mo. 54; Schierbaum v. Schemme, 157 Mo. 1.]   But those were not cases of a lost will, of whose contents secondary evidence alone is obtainable.   Where substantial evidence has been adduced  to show the due execution of the will, that it has been lost, that it was not revoked, and its contents, it is then admissible to prove in corroboration of the other evidence what the testator  himself said about it. [1 Underhill on Law of Wills, sec. 277; 1 Jarman on Wills (6 Am. Ed.) p. 159, note U; Southworth v. Adams, 11 Biss. 256; In re Lambie's Estate, 97 Mich. 49; Conoly v. Gayle, 61 Ala. 116; McDonald v. McDonald, 142 Ind. 55; In re Valentie's Will, 93 Wis. 45.]

There was no error in admitting Mrs. Goodwin's testimony.

IV.   In the main instruction given by the court defining the issues and directing on what findings of facts the jury were authorized to render a verdict establishing the will, occurs this language:   ''If you should believe from the evidence that a paper writing was signed by Elizabeth Pankey as and for her last will,'' etc.   The objection is now made that it was error to have used that language, because there was no evidence that Mrs. Pankey ''signed'' the paper.   In that

respect, the record does not support the objection; whilst the testimony of Mrs. Mann was that she could not remember whether the testatrix signed it or made her mark, yet that of James Younger was quite positive that she signed it. But, under the circumstances, it makes no difference whether with her own hand she wrote her name or adopted the signature written by some one else by making her mark; in either case it was in legal effect a signing.

V. Mary Pankey, a witness for defendant, testified that before the death of the testatrix, witness had a conversation with Mrs. Mann about the will and that Mrs. Mann told her that Savannah (Mrs. Balfour) had cried and cut up so about the will that she, Mrs. Mann, had destroyed it. Mrs. Mann in rebuttal contradicted the witness on this point. In the instructions given, the court directed the jury that Mary Pankey's evidence on this point was to be considered only in the way of impeaching the testimony of Mrs. Mann; that it was no evidence that Mrs. Mann had destroyed the will. Appellant contends that that was error.

There were only three essential questions in the case. Did Mrs. Pankey make a will? Did she revoke it? What were its contents?

If Mrs. Mann had, in order to appease her sister, destroyed the will, that would not have been a revocation of it; it would not have affected its validity. Mrs. Mann could no more revoke her mother's will than she could make one for her mother. It is, therefore, immaterial except as bearing on Mrs. Mann's good faith and credibility whether she told Mary Pankey that she destroyed the will or not. When the jury came to consider the question of revocation, they might, if they were not properly instructed, have concluded that this was evidence of revocation of the will and the verdict might have gone off on that erroneous view. Therefore it was proper for the court to instruct them on this point as it did.

There was no error in that instruction.

VI.  The next point in appellant's brief is that the instruction in the nature of a demurrer to the evidence should have been given.  The ground urged is that there was no evidence that Mrs. Pankey signed the paper. This is a repetition of the ground taken against the clause in the instruction discussed in paragraph IV of this opinion, and we have no more to say on that point.

The testimony for the plaintiff tending to prove the execution of the will, is really corroborated by the testimony of the defendant.  He testified that there was a will, that he saw it and read it while standing by the bedside of the testatrix.  And whilst the contents according to his recollection are not exactly as they were stated to be by the plaintiff's witnesses, yet according to his statement, the will discriminated against his wife in favor of her sister.  He emphasized that fact by stating that the testatrix had given him her reason for the discrimination, and when he assured her that he had not done the act that had given her offense, she declared that she desired the destruction of the will, and thereupon Mr. Pankey took the will and walked out of the room.  And there the evidence for defendant on the question of revocation leaves the subject.

When the evidence shows that a testator has made a will and retained it in his possession and it can not be found among his papers after his death, the law raises a presumption that he revoked it.  But that is not a conclusive presumption, and may be overcome by showing circumstances that disprove it.  In this instance, the evidence tends to show that the testatrix was under the impression that her will would have to be recorded and she gave it to her husband with the request that he take it to the court house and have it recorded, and gave him money with which to pay for the recording; that the husband of testatrix and her daughter Mrs. Balfour went to town for that ostensible pur-

pose; what they did with it does not appear, they both being dead. According to Mrs. Goodwin, the testatrix thought that the will was recorded—she told Mrs. Goodwin that it was recorded. If the jury believed that evidence it was sufficient to overcome the presumption of revocation that would arise from the fact that the will was not found among the papers of the testatrix after her death.

Defendant's witness, Mary Pankey, bears out the fact that there was a will, and that the testatrix told her what its contents were. According to this witness's recollection the discrimination against Mrs. Balfour was more serious than the plaintiff's witnesses state it; Mrs. Balfour was to have nothing as long as her husband lived and if she died first "Mrs. Mann was to have the whole thing."

Thus the defendant, by his own testimony and that of his witnesses, made almost as strong a case for the plaintiff as did her own witnesses. There was no error in refusing the instruction in the nature of a demurrer to the evidence.

VII. The last point presented by appellant is that the court erred in striking out part of his answer. The part struck out set up as a reason why the will ought not to be established that after the death of their mother the two daughters got together and divided the personal property, and Mrs. Mann afterwards sold her half interest in the land to Mrs. Balfour; therefore, Mrs. Mann is estopped from now seeking to establish the will.

Whatever effect on the title of the property, personal or real, the act of the two sisters in relation thereto may have had *inter sese*, it can not affect the questions that were in issue in this case, nor can the judgment establishing the will alter the legal effect of such act. How could the act of the sisters in dividing the property and the purchase by one of the interest of the other bear on the question of the making of the

will, or revoking it or its contents? Besides it is conceded that Mrs. Mann was, during all this time, a married woman, and her alleged acts amounted not to an estoppel, there being no fraud or imposition shown, and, of course, the Statute of Limitations, even if it applied to a case of this kind, did not bar a married woman. [Lindell Real Est. Co. v. Lindell, 142 Mo. 61.]

We discover no error in the record. The judgment is affirmed. All concur.