R. J. HURLEY LUMBER CO.

v.

CUMMINGS et al.

No. 7198.

Springfield Court of Appeals.

Missouri.

Jan. 19, 1954.

Not to be published in State Reports.

Herbert Douglas, Neosho, for appellant.

Sater & Monroe, Monett, for respondent.

McDOWELL, Presiding Judge.

This action is on account for lumber and building materials alleged to have been purchased by defendants, in the sum of $2,323.62. Suit was filed in the Circuit Court of Newton County, Missouri, tried by jury, resulting in a verdict and judgment in favor of plaintiff in the amount sued for. The trial court sustained a motion for a new trial on the ground that plaintiff's instruction numbered I failed to embody necessary facts shown in evidence to properly submit the issues to the jury. Plaintiff appealed.

Plaintiff's petition alleged that defendants purchased lumber and building materials from plaintiff during the period from April 26, 1952, to, and including, June 3, 1952, in the amount of $2,323.62; that the lumber was sold to defendants at their request and credit extended to them; that payment was demanded of defendants and, by them, refused. A sworn itemized statement of the account is attached to and made a part of the petition.

Defendants' amended answer admits that they own the land on which the lumber is alleged to have been used in a building but

deny generally all of the other allegations of the petition. The answer pleads affirmatively that defendants employed J. I. Myers, an independent contractor, to build the house for an agreed price of $6,000; that by the terms of the contract Myers was to furnish all materials and do the work and defendants plead they had no knowledge that plaintiff furnished the materials to build the house.

Plaintiff's amended reply pleads that Lola Cummings, defendant, in her own right and as agent of defendant C. H. Cummings, made arrangements for credit for the materials sold, prior to any contract entered into with J. I. Myers, and that said defendants instructed said Myers to buy the lumber and materials and charge the same to defendant; that most of the materials were sold and delivered to defendants prior to the contract between defendants and Myers pleaded in the answer. The reply pleads estoppel in that defendants, by their actions in having Myers purchase materials from plaintiff and knowing that the materials were being charged to them, failed to make any objection to the charging of said account to them, and, because of such acts, defendants are estopped to deny liability for such purchases. The reply pleads that plaintiff knew nothing of any contract between defendants and Myers for the erection of said building.

The evidence shows that plaintiff operated a retail lumber business in Neosho, Missouri; that defendant, Lola Cummings, came into plaintiff's place of business and wanted some plan books; that later she came back and got the plan books and had a plan for a house ordered; she informed plaintiff's agent she had not employed a carpenter yet but had two men in mind and would notify plaintiff when she selected the carpenter. Plaintiff's witness gave this testimony:

"Q. Told you both she and her husband were going to build the house? A. Yes, sir.

"Q. What did she ask you about credit, if anything? A. She asked me how to go, what arrangements she could make in paying for the material, and I told her that depended on whether they had the money to build it or would have to finance it.

"Q. What did she tell you? A. Told me that, informed me that she had the money to build the house and would rather pay for the material when the building was completed because she said it would be easier for her to keep track of the total cost.

"Q. Did she ask for credit for herself and Dr. Cummings? A. Yes, sir."

The witness testified that Mr. Myers, the carpenter, came in and gave the orders for the lumber which plaintiff delivered to defendants' farm. He testified he went with Myers to defendants' building after the building was partially completed and that the materials plaintiff furnished were used in the building. He testified that tickets were made, itemizing the merchandise sold, and later these tickets were placed on the ledger in exactly the same form as made when the materials were sold.

There seems to be no dispute in the evidence that the contractor, Myers, actually purchased from plaintiff the building materials in the sum of $2,323.62 as alleged in plaintiff's petition. The evidence is undisputed that at the time of the purchases he had the same charged to defendants. The evidence is undisputed that plaintiff was never notified by any one of the contract arrangements, if any, between Myers and defendants. There is no dispute that the materials sold and delivered were of the reasonable value of the amounts charged. The first merchandise was purchased April 26th and the next was made April 28th and, it seems, that most of the purchases were made prior to the entering into of the contract alleged to have been made between defendants and the carpenter, Myers.

The written evidence shows that the tickets were made out at the time of each sale showing the date of sale and recited, "Sold

to J. I. Myers, Address—Farm House Stark City, On Dr. C. H. and Lola Cummings job."

The evidence shows that demand was made for payment on defendants on July 21st and that defendants refused to pay the bill.

Plaintiff's employee testified that at the time Mrs. Cummings made the arrangements for the credit extended, at plaintiff's place of business, defendant, Dr. C. H. Cummings, accompanied her in an automobile and drove in the east driveway of the yard but that he never got out of the car. Mrs. Cummings came in alone. He testified that neither of defendants came back during the time the lumber was furnished.

On cross-examination plaintiff's witness gave this testimony:

"Q. I'm asking you if she told you she'd buy the lumber from you? A. She did."

It is undisputed that at the time of each sale of lumber an original ticket and three copies were made, itemizing the articles sold; that plaintiff kept all of the copies and the original and did not send defendants such copies. The witness gave this testimony:

"Q. On that first occasion you did agree to give her credit and her husband credit, didn't you? A. Yes, sir."

J. I. Myers testified that he was employed by defendants to build the residence on their 160 acre farm near Stark City; that there was no contract between defendants and himself until nearly a month after the house was started. He stated that he thought he signed a contract on May 22nd. The witness gave this testimony:

"Q. Mr. Myers, did you purchase material from the Hurley Lumber Company on the 26th day of April this year to be used in the Cummings house? A. I did through his authority."

The court struck this answer out and then this testimony was given:

"Q. At whose direction did you go and buy the materials from the Hurley Lumber Company? A. Dr. Cummings and his wife told me Hurley Lumber Company was their lumber company and so I should get the lumber there. I said, 'I don't have money to pay for it and won't have.' He said, 'It won't make any difference. I will pay you every day or every evening for your work but the lumber is to paid when we get through.'

"Q. Did you go to the Hurley Lumber Company and charge the purchase of this lumber to Dr. and Mrs. Cummings? A. I did. I charged it to Dr. and Mrs. Cummings."

The witness testified that he was to be paid every Saturday night for labor at $1.75 per hour. Then the witness gave this testimony:

"Q. Now at the time you first purchased these materials you didn't have any contract, written contract or contemplated contract with Dr. and Mrs. Cummings? A. Nothing whatever.

"Q. And any arrangement in regard to the contract later with Dr. Cummings, was that made after you purchased the materials from Hurley? A. Nearly up to where we quit off. Not to the material at all.

"Q. As a matter of fact what date was it that you did sign this particular contract? A. I believe it was 22nd day of May."

The witness testified he had no contract of any kind before the 22nd day of May; that up to that time he was working on an hourly basis. He testified he never told Dr. Cummings he was getting the materials from Arkansas. He stated that Dr. and Mrs. Cummings were on the premises where the house was being built nearly every day during the building. He testified that on one particular occasion when the Hurley Lumber Company was delivering materials for the house both Dr. and Mrs. Cummings were present.

The witness testified that the lumber, as alleged in plaintiff's petition, was sold and delivered and used in the building of the house on defendant's land. He denied he ever told Dr. Cummings, prior to the starting of the house, he would furnish material and labor and build the house for $6,000. He admitted that later they did sign a contract and he was to receive $2,000 when the foundation was completed. He stated at the time the contract was signed the foundation had already been completed. The witness testified he started the foundation on April 22nd and that he was seven days in putting it in. He testified he employed and paid the labor himself. He gave this testimony:

"Q. Now when did you do the ordering of the particular materials you would want that day or who did that? A. Dr. Cummings verified the order.

"Q. Why do you tell the jury that Dr. Cummings then knew something about the order? A. Because he told me to get it at the Hurley Lumber yard.

"Q. Now you never received any bill of the materials at all? A. The bill was left there for Dr. Cummings."

The witness testified that he signed a written contract, which was offered by defendants in evidence, but he stated they never worked under the contract and that Dr. Cummings told him to let the contract go. He stated later that he was fired by Cummings before the building was completed. He testified he did not have any insurance on the house but that Dr. Cummings did have $2,000; that the house burned and Dr. Cummings collected the insurance; that he was paid $2,000 by Dr. Cummings and that the house was practically completed at the time. He stated he was fired June 3rd. He gave this testimony:

"Go ahead as to any other conversation you had with him about whether or not you'd proceed under the contract or not. A. He said, "Go ahead and build it' and he said, 'Forget the God damn contract and go ahead and build it.'

"Q. After that conversation did you go ahead and work on a daily basis? A. I went ahead and worked just as we had been working all the way along."

Albert Henke, an employee of the plaintiff-company, testified he was present and heard defendant, Mrs. Cummings, tell Mr. Henry, the salesman for plaintiff, at plaintiff's office, she and her husband were going to build a new home and wanted to buy the lumber from plaintiff and they wanted to pay for the same at the end of the job. He stated he did not see Dr. Cummings there at the time. This witness testified that Mrs. Cummings later came into the office and asked if they owed a material bill and that he turned to the ledger and told her the amount; that she came back again and asked him for the amount and he gave it to her. The witness testified he saw Dr. Cummings out in the yard at the time his wife came in to get the plans for the building and again when his wife came in to get the bill. He gave this testimony:

"Q. Did Dr. Cummings or Mrs. Cummings ever tell you or say in your presence they were buying lumber from the Hurley Lumber Company? A. Yes.

"Q. They did that? When was that? A. On the day she asked Mr. Henry for credit."

Cleo Garner testified that the prices for the different kinds of lumber delivered were reasonable.

Harold Smith, an employee of plaintiff-company, testified that he heard the conversation between Frank Henry and Mrs. Cummings in the company's office wherein Mrs. Cummings told Henry she wanted to pay the bill at the end of the month or when the job was completed. He also testified as to seeing Dr. Cummings and Mrs. Cummings come into the office after Myers was fired and that Mrs. Cummings asked for the amount of her account.

Plaintiff's witnesses testified that while working on the building they saw defendants many times at the place of the building. One witness testified that he saw Dr. and Mrs. Cummings helping unload some materials from plaintiff's truck. There is testimony that some of the material bought for the building was not used and is still on the premises. The testimony shows that the insurance agent sold defendants a policy on the house for $2,000 and, later, paid the loss; that the check was made to both defendants.

Defendants' testimony shows that Dr. Cummings was a veterinarian, maintaining an office in Neosho. It shows that defendants and contractor Myers entered into a written contract whereby defendants were to pay $6,000 to Myers to furnish the materials and labor and build the home in question; that $2,000 was paid on this contract at the time it was signed. The testimony is uncertain as to when the contract was actually signed but the jury would have been justified in finding that it was signed May 23rd. Defendants specifically deny that they ever purchased any lumber from plaintiff or authorized Myers to purchase the same in their name. They do not deny that Mrs. Cummings went to plaintiff's office to get a plan for the house and, later, went back to the office and paid $10.25 for said plan. Dr. Cummings does not deny that he took his wife to plaintiff's place of business at the time she ordered the plan and at the time, plaintiff contends, she made an agreement to purchase the lumber and building materials. They do not deny that they later went down to plaintiff's office and were told how much the bill was. Dr. Cummings says he went back to plaintiff's office after Myers quit working June 3rd for the purpose of buying more lumber to complete the house. He stated he had purchased lumber from plaintiff-company before. Dr. Cummings also denied he instructed Myers to buy the lumber on the credit of defendants but stated the contract was the controlling business between himself and Myers.

In this opinion we will refer to appellant as plaintiff and to respondents as defendants, being their positions in the lower court.

Instruction No. I, given by the court, reads as follows:

"The court instructs the jury that if you find and believe from the greater weight of the evidence that the plaintiff R. J. Hurley Lumber Company extended credit, sold and delivered to Lola Cummings in her own right and as agent for defendant C. H. Cummings, and to J. I. Myers as agent for defendants C. H. Cummings and Lola Cummings, certain items of merchandise or building materials for the building of the house mentioned in the evidence, between the 26th day of April and the 3rd day of June, 1952, and that the prices charged therefor were the reasonable value thereof, and that the prices of said merchandise or building material have not been paid, then your verdict shall be for such amount against the defendants and for the plaintiff, but not to exceed the sum of $2323.62.

"If in addition to the above matters you shall further believe and find from the evidence that plaintiff has demanded payment of the amount (if any) due from the defendants and that the defendants have failed to pay any amount (if any) due plaintiff, then you will calculate the interest on the amount due plaintiff (if any) from the date of said demand, at the rate of six per cent per annum, to this date, and you will render your verdict for said amount (if any) due, together with said interest thereon."

Instruction No. II, given by the court, is as follows:

"The court instructs the jury that if you find and believe from the evidence that defendants C. H. Cummings and Lola Cummings entered into an oral contract with J. I. Myers for the construction of a house, except for the heating system and hot water tank, which said oral contract was thereafter

reduced to writing and signed by the parties, whereby said J. I. Meyers contracted to build said house for the specified sum of $6,000.00, furnishing the materials *therefore,* if you so find; and if you further find and believe from the evidence that said J. I. Myers ordered the lumber and materials in issue in this cause from the *defendant* herein, if you so find; and if you further find and believe that the defendants herein did not specifically authorize the plaintiff herein to sell said lumber and materials on their credit, if you so find; then you are instructed that the said J. I. Meyers purchased said lumber and materials personally and upon his own credit, as an independent contractor, and, if you so find, then your verdict shall be for the defendants herein and against the plaintiff herein."

Instruction No. III reads:

"The court instructs the jury that you are not authorized to find for the plaintiff unless you believe from the greater weight of the evidence that the defendants herein made the said J. I. Myers their agent to make the purchase of the items of the account sued upon and the burden is on the plaintiff to prove such facts by the preponderance and greater weight of the evidence, and if it has not done so, then your verdict must be for the defendants, and in this connection, you are further instructed that the written contract executed by the defendants and J. I. Myers did not constitute the said J. I. Myers an agent to purchase the items in said account upon the credit of the defendants."

The trial court assigned as his reason for sustaining defendants' motion for new trial that instruction No. I, given by the court, fails to embody all the necessary facts shown in evidence under the pleadings to properly submit the issues to the jury.

Plaintiff's petition alleged that defendants purchased the lumber and building materials, set out in the itemized statement attached thereto, from plaintiff during the period from April 26, 1952, to, and including, June 3, 1952, in the total amount of $2,323.62. The petition pleads that the materials were sold to defendants at their request and credit extended; that the merchandise was delivered to defendants; that demand has been made upon the defendants for the payment of said account and refused.

The answer amounts to a general denial.

■ The only issue for the jury was the question of whether or not the evidence showed that the defendants purchased the materials, itemized in plaintiff's petition, from plaintiff on account; that demand has been made for the payment thereof and payment refused and that the materials were of the reasonable value sued for.

We cannot agree with the trial court that instruction No. I does not properly present that issue to the jury.

■ We think the trial court might have been misled by the fact that defendants pleaded a contract with one, Myers, constituting him an independent contractor. The only legal effect that such a contract could have would be that it shows defendants did not buy the lumber and materials from plaintiff. The burden of proof was upon plaintiff to show that the goods in question were sold to defendants, either personally or through their agent and, if there is sufficient testimony to submit that issue to the jury, that is all that was necessary under the pleadings to justify the verdict. The instruction, we think, is proper. Skillman v. Ballew, Mo.App., 27 S.W. 2d 1036, 1037; Armould Oil Co. v. Wilkinson, Mo.App., 16 S.W.2d 678.

The only objection that might be made to this instruction is as to the question of whether or not J. I. Myers was authorized to act as agent for defendants in the ordering of the merchandise in question. If the first instruction was not clear as to what constitutes agency, the second instruction, given by the court, fully corrects any defi-

ciency in the first instruction and the third instruction, given by the court, is so plain as to what constitutes agency that the jury could not possibly have been misled.

Defendants assign additional errors why the judgment of the trial court should be sustained. Under their first assignment they contend that their motion for a directed verdict at the close of all of the testimony should have been sustained.

Under this assignment defendants give the following reasons: First, that the written contract constituted Myers an independent contractor.

■ We hold this written contract had no legal effect more than possibly to show that Myers was not acting as the agent of defendants at the time the goods were ordered.

The second contention is that the plaintiff relies upon estoppel pleaded in its reply and that that issue was not submitted.

There can be no question but what the pleadings presented an issue of whether or not plaintiff sold the goods, either to defendants or to the authorized agent of defendants, and that issue was presented by the instructions in the case. So we think there is no merit in the question as to estoppel.

The third contention raised under this assignment of error is that instruction No. I undertakes to cover the whole case and must contain every element necessary for recovery.

■ We submit that instruction No. I requires the jury to find that plaintiff extended credit to defendants and sold and delivered to them the materials sued for; that the price charged therefor was reasonable; that the purchase price had not been paid; that demand has been made therefor and payment refused by defendants. Now if the jury finds these facts from the evidence that is all that was necessary. We, again, state that defendants' answer is merely a general denial raising only the question as to whether or not defendants or defendants' authorized agent purchased the lumber and materials in question and that is the only issue in this lawsuit.

■ The fourth contention under this assignment of error is that the court committed error in permitting testimony as to the collecting of $2,000 insurance by defendants.

This testimony could have been material only in showing that defendants were the owners of the property where the materials, sold by plaintiff, were used and we think that it is not reversible error.

■■ Under the law it is the duty of the appellate court where a cause has been tried before a jury only to ascertain if there are probative facts to support the conclusion reached by it. If there is evidentiary basis for the verdict of the jury the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. Johnson v. Thompson, Mo.App., 236 S.W.2d 1, 7.

■ If there is substantial evidence in this case to support the verdict of the jury then this court is bound by the jury's findings. In determining the sufficiency of the evidence we take as true all the evidence offered by plaintiff and such part of defendants' testimony as supports plaintiff's case.

The testimony shows that Dr. C. H. Cummings and his wife went to plaintiff's place of business; that Dr. Cummings remained in the car and Mrs. Cummings went in and, there, talked to plaintiff's manager and told him she and Dr. Cummings were going to build a home on their farm and asked to see plans for homes contained in books in plaintiff's possession. The testimony shows that she, there, told plaintiff they wanted to purchase the building materials from plaintiff and asked how they should carry the account; that when plaintiff's agent asked her about whether they had the money to build the house or wanted to finance it she stated they had the money and wanted to pay for the materials purchased when the building was completed. The testimony further shows that she was asked if she

had employed a carpenter to build the house and she stated she had not but had two under consideration and she would let him know whom she employed. The testimony shows that Mrs. Cummings came back to plaintiff's place of business and got a plan she had had plaintiff order for her and paid him for it; that shortly thereafter, one, Myers, whom, it is admitted, both Dr. and Mrs. Cummings employed to build the house, came to plaintiff's place of business and ordered material for the house and had it charged to defendants. The testimony shows that plaintiff's truck delivered the lumber on different occasions as the house was being constructed. The name of plaintiff's firm was on the truck and the defendants saw the truck delivering the lumber and never made any move to let plaintiff know they did not intend to pay for the same. The carpenter, Myers, testified that both defendants told him to go to plaintiff's lumber yard and buy the material and that it did not have to be paid for until the house was completed and he testified that he was buying the lumber at the request of defendants and they were to pay for the same. The testimony further shows that defendants discharged Myers on June 3rd and that the bill was never paid.

Now the testimony shows that a written contract was entered into between Myers and the defendants, whereby Myers was to build the house and furnish the materials for $6,000; that $2,000 was to be paid when the basement was completed. The testimony shows this contract was signed May 23rd, at which date a greater part of the merchandise had been already purchased and delivered to defendants' premises. Concerning this contract Myers testified that he was first employed and paid by the hour; that the contract was completely disregarded; that defendants had instructed him to buy the lumber on their credit and he did so buy the lumber.

 There is no question but what the testimony on all these points was very much in conflict but we think there was substantial testimony to show that defendants did make arrangements for the purchase of the lumber on credit and that they directed Myers, as their representative, to order the lumber. There is no dispute but what the lumber was delivered to defendants' premises and used in the building. Therefore, we think there was substantial evidence to support the verdict of the jury and the judgment entered thereon.

It is therefore ordered by this court that the judgment of the trial court granting a new trial be set aside and the trial court is ordered to reinstate the judgment rendered upon the verdict in favor of plaintiff.

BLAIR, J., concurs.

VANDEVENTER, J., deceased.