Eugene BIRDSONG, Plaintiff-Respondent,

v.

ESTATE of Edmund D. LADWIG, Esco V. Kell, Administrator, Defendant-Appellant.

No. 7693.

Springfield Court of Appeals.

Missouri.

June 13, 1958.

Esco v. Kell, West Plains, for defendant-appellant.

Green & Green, H. D. Green, Hogan & Hogan, Michael W. Hogan, West Plains, for plaintiff-respondent.

RUARK, Judge.

This is an appeal from a judgment, based on jury verdict, allowing plaintiff's claim for services against the estate of Edmund D. Ladwig.

Near the first of the year 1955, Edmund Ladwig came from Iowa and set up a radio and television shop in West Plains. Apparently the business did not flourish. In March Ladwig became ill and was out of the shop approximately the last half of that month. About March 30 he died or committed suicide. Claimant Birdsong thereafter presented his claim against the estate for services consisting of eight and a half hours per day from and including January 11, 1955, to and including March 30, 1955, in total of $578, with credit allowance of "wages received" in the amount of $78. The probate court allowed the claim and assigned it to the fifth class of demands. Upon appeal the jury awarded the claimant $465 and the administrator has appealed.

It was the contention of the claimant that he was employed by Ladwig as "service technician" at $1 per hour. Claimant himself testified that he had previously had one year's correspondence school instruction and some training as a member of the National Guard. As to his work performed for Ladwig, he testified inter alia that in February he had installed a television aerial

at the home of one Thurman Green and "took the set in and adjusted it," and that during the period of employment "we" did radio and television work for a Bill Hale and a Lester Smith.

Claimant's principal witness, Walter Kurst (age twenty-four and close friend of claimant), to whom objection was made because he also had a claim against the estate, testified that he also worked for Ladwig during a part of the period claimed and was around the shop a great deal when not so working; that claimant was engaged in work at the Ladwig shop during the period; that Ladwig told him he had hired claimant Birdsong as technician at $1 per hour; that he had heard Birdsong make demand for wages and was present (February 26) when Ladwig gave claimant a check for $10. He also identified another check (March 20), Ladwig to Birdsong, in the amount of $20. He said he recalled two other payments, one either $2 or $3 and another $18, which were made in cash.

Plaintiff's witness Thurman Green testified that he was around the shop and had seen claimant Birdsong working there. He said he hired Ladwig to put up an aerial for him but claimant Birdsong did the work; but he denied (as claimant had testified) that he had had a television repaired. He said Ladwig told him he hadn't paid Birdsong for his work because everything he had was "tied up until he could get it released. He didn't have much chance of doing business or anything else."

On the other hand it was the administrator's theory, supported by substantial evidence, that the claimant was inexperienced but wanted to learn the trade; that he hung around the shop; that Ladwig took him in to teach him the trade in return for spending money; that claimant told others of this arrangement and expressed himself as satisfied with what he was getting under it. It was shown that claimant had bought a short-wave transmitter and receiving set from Army Surplus, in which it also appears that his friend and witness Kurst had

some small interest, and that this set was placed in Ladwig's shop, where the two boys were building for it a "power supply," with some indication of assistance from Ladwig in that regard.

The principal contention of appellant is that the court erred in permitting the claimant to testify to certain things in his own behalf.

Claimant, called as his own witness, gave his name and address. Defendant objected:

"We object to any further testimony on any matters to the claim or contract or any part of his claim because of the fact that Edmund D. Ladwig is deceased and under the dead man's statute this man can't testify.

"The Court: That wouldn't bar all testimony of any kind.

"Mr. Kell: We want to make our objection at this time and carry it along.

"The Court: Objection overruled as to any testimony by Mr. Birdsong."

The witness then testified that his occupation was television and radio technician. He was then asked:

"Q. In the occupation you are now engaged in have you had any previous training in that?

"Mr. Kell: We object to the testimony of this witness on that question because of the relation between him and the deceased."

The objection was overruled. When the question of his training was further pursued, defendant first objected because the witness was inclined to volunteer. Thereafter objection was made "for the reason it is irrelevant," and the objection was overruled.

He was then asked if he had gone to the home of one Thurman Green during the year 1955, and defendant objected that it

**475**

was "irrelevant and immaterial to this case where Thurman Green is in no way connected with it." He was then asked what happened at the Thurman Green house, and objection was made, "It is irrelevant as to what relation he and Mr. Green had," and overruled. He then testified that he did some work at the Thurman Green home, and:

"Mr. Kell: We object to that."

Inquiry was then made as to the date he did the work.

"Mr. Kell: We are objecting to any work this witness did for Mr. Green.

"The Court: The thought may follow that the defendant is objecting to all testimony as to anything that occurred at the Thurman Green home now being inquired about and the objection is overruled."

The witness then testified, without objection, that at that time (which was *during the period of his claimed employment*) "we installed a television for Mr. Green" and "took the set in and adjusted it." He was then asked if he had done any radio or television work (during the period of the claimed employment) for a Mr. Bill Hale.

"Mr. Kell: We make an objection to that under the same objection.

"The Court: Objection overruled on the assumption counsel will prove a similar state of facts."

He then testified that he did radio or television work for a Lester Smith, and upon inquiry as to what period of time:

"Mr. Kell: We object to any testimony this witness had to do with radio or television work against the estate of

Edmund D. Ladwig as to Smith or Hale.

"The Court: Objection overruled.

"A. Yes, sir, we did."

Defendant did not cross-examine.

■ The dead man's statute (now sec. 491.010) has been the source of considerable confusion, but it is now well settled that in respect to the first portion, where one of the original parties to the contract or cause of action is dead the other party shall not be admitted to testify in his own favor, the disability imposed is not absolute but applies to only such acts and transactions concerning which the deceased could, if living, have denied [1] (for convenience we will refer to this portion of the statute as the "transactions" disqualification); whereas the latter portion of the statute, which provides that where the executor or administrator is a party the opposite party shall not be admitted to testify in his own favor except as to acts and contracts made since the probate of the will or appointment of administrator, imposes an absolute disability to testify in a contract action concerning *anything* which occurred before commencement of probate [2] (for convenience we will refer to this as the "administration" disqualification).

The distinction between the "transactions" disqualification and the "administration" disqualification is clearly made in Weiermueller v. Scullin, 203 Mo. 466, 101 S.W. 1088, 1090; Davis v. Robb, Mo.App., 10 S.W.2d 680; Doyle v. Doyle, 232 Mo. App. 27, 88 S.W.2d 387; Norton v. Lynds, Mo.App., 24 S.W.2d 183, 185; Kneuven v. Berliner's Estate, Mo.App., 54 S.W.2d 494, 500; Ferry v. Woody, 210 Mo.App. 98, 241 S.W. 78, 80.

1. Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071; Stephenson v. Stephenson, 351 Mo. 8, 171 S.W.2d 565; B. F. Goodrich Rubber Co. v. Bennett, 222 Mo.App. 510, 281 S.W. 75; Swon v. Huddleston, Mo., 282 S.W.2d 18, 27, 55 A.L.R.2d 205.

2. Butler v. Walsh, Mo.App., 235 S.W.2d 826, 832; Geisendorfer v Geisendorfer, Mo.App., 227 S.W.2d 470, 473; Grassmuck v. Ehrler, Mo.App., 207 S.W. 287.

■ The objection, made at the outset, as to "any matters to the claim or contract or any part of his claim because Ladwig is is deceased and under the dead man's statute this man can't testify" could have applied to either (or both) the transactions disqualification or the administration disqualification, both of which have equal force under the statute. And we think it was not necessary that defendant specifically call attention to the fact that the administrator was a party since the case was an appeal from probate court on a claim against the administrator. The court knew, or should have known, that the administrator was a party.

■ But the court was not technically in error in overruling the objection as to the witness when he had simply given his name and address and no further question had been asked, because, under the transactions disqualification, the witness would have been competent to testify as to matters which the deceased could not, if living, have refuted because they concerned things "with which he had no connection, and of which he had no knowledge";[3] and under the administration portion he would not have been disqualified from testifying to facts, otherwise competent, which occurred after the administration was commenced.[4]

■ True it is, as it developed, the inquiry did not extend to matters which occurred after commencement of administration, and we can assume that claimant knew that was not the purpose; but we cannot assume the court knew it. Hence the court was correct in his statement, "That wouldn't bar all testimony of any kind," and in overruling the objection "as to *any* testimony by Mr. Birdsong." The rule

is that the examination will be permitted to continue until a purpose to transgress against the disqualification has been disclosed.[5]

■ The plaintiff gave notice that he was objecting to any testimony of the witness in reference to his claim by stating that he wanted to make his objection and "carry it along." But unfortunately he did not carry it along by making proper objection at the proper time. The next inquiry was concerning the previous training and experience of the claimant, somewhat important in the case because claimant's case was based on the fact that he was employed as a "technician," while defendant's contention was that he came into deceased's business house for the purpose of receiving training in exchange for spending money. Claimant was plainly disqualified under the administration portion of the statute, but the objection made to such testimony was based on "because of the relation between him and the deceased." What defendant meant by that objection we do not know, and since we do not know we cannot convict the trial court of error in not interpreting it as an objection referring to the statutory disqualification under the administration provision.

■ Thereafter the inquiry led into work claimant had done under and during the period of his claimed employment, and as to that we think the witness was also disqualified under the transactions prong of the statute.[6] Had proper objection been made, it would have been error to overrule it, but the objections which defendant made to this character of testimony were all general: "We object to that as being

3. Weiermueller v. Scullin, 203 Mo. 466, 101 S.W. 1088, 1090; see Martin v. Jones, 59 Mo. 181; Swon v. Huddleston, Mo., 282 S.W.2d 18, 27, 55 A.L.R.2d 205.

4. Clark v. Meriwether, Mo.App., 123 S.W. 2d 603, 608.

5. Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071; B. F. Goodrich Rubber Co. v. Bennett, 222 Mo.App. 510, 281 S.W. 75; Scott v. Scott, Mo.App., 265 S.W. 864.

6. 97 C.J.S. Witnesses § 219, p. 678; see Yawitz v. Laughlin's Estate, Mo.App., 68 S.W.2d 830, 832; Chapman v. Dougherty, 87 Mo. 617, 626.

irrelevant and immaterial to this case where Thurman Green is in no way connected with it"; "It is irrelevant as to what relation he and Mr. Green had"; "We object to that"; "We are objecting to any work this witness did for Mr. Green"; "We make objection to that under the same objection"; "We object to any testimony this witness had to do with radio or television work against the estate of Edmund D. Ladwig as to Smith or Hale." In none of these objections, made when a good objection would have excluded the testimony, did defendant specify or point out any reason, other than the evidence was irrelevant.

 Since the witness is not incompetent under the dead man's statute for all purposes, objections must be specific and sufficiently exact to inform the court of the reason why the witness is disqualified in the particular instance.[7] The court cannot be convicted of error in refusing to sustain general objections where the evidence is competent for any purpose.[8] Here there is no contention that the *evidence* of the work done by claimant during his claimed period of employment for customers of the business was incompetent for any purpose. The contention is that the witness was *disqualified* from giving such evidence, but the objections to such evidence did not reach the disqualification so claimed. Here defendant made a good objection when the evidence had not reached the point of disqualification, and he failed to make a proper objection when that point was reached.[9] The situation is somewhat akin to that presented in Elsea

v. Smith, 273 Mo. 396, 202 S.W. 1071, loc. cit. 1073. And it is distinguishable from that in Schwalbert v. Konert, 230 Mo.App. 811, 76 S.W.2d 445, loc. cit. 453, in which case there was a clear-cut ruling at the outset that the witness was not disqualified and it was held the objection need not be repeated. In the instant case the court, by its remarks and ruling, practically invited objection to be made later when the point of disqualification was reached. Because of such failure to make proper objection we must hold that the court did not commit error in allowing the witness to testify.

Appellant assigns error in refusal of his motion for directed verdict. He argues that the testimony of claimant's principal witness is so conflicting and contradictory that a verdict based upon it must have been the result of speculation and conjecture. We do not find it so. The witness testified that claimant worked for Ladwig at the shop during the period claimed, and that Ladwig told him, the witness, that he had hired the claimant for $1 per hour. He was supported in part by testimony of both Thurman Green and claimant as to certain work performed by the claimant, and he was also supported by testimony of Green as to Green's conversation with the deceased, in which conversation deceased told Green that the reason he hadn't paid claimant was that everything he had was tied up.

 The primary responsibility for determining the weight to be given the evidence rests first upon the jury and next

---

7. Kneuven v. Berliner's Estate, Mo.App., 54 S.W.2d 494; Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071, 1073; Burgdorf v. Keeven, 351 Mo. 1003, 174 S.W.2d 816; see 23 Washington University Law Quarterly, p. 366; Wolfson v. Chelist, Mo. App., 278 S.W.2d 39, loc. cit. 43; Id., Mo., 284 S.W.2d 447; People's Bank of Queen City v. Aetna Casualty & Surety Co., 225 Mo.App. 1113, 40 S.W.2d 535, 542; In re McMenamy's Guardianship, 307 Mo. 98, 270 S.W. 662.

8. 97 C.J.S. Witnesses § 117, pp. 525, 526; Deichmann v. Aronoff, Mo.App., 296 S.W. 2d 171; Hill v. Johnson, Mo.App., 178 S.W.2d 801, 803; United States v. Nickle, 8 Cir., 70 F.2d 873, 875; see Mann v. Balfour, 187 Mo. 290, 86 S.W. 103; Burns v. Polar Wave Ice & Fuel Co., Mo. App., 187 S.W. 145; Edinger v. Kratzer, Mo., 175 S.W.2d 807.

9. See 97 C.J.S. Witnesses § 247, p. 733.

upon the trial judge in passing upon the motion for new trial.[10] And we do not interfere with the verdict unless there is a complete lack of probative evidence to support it.[11] In determining this question it is our duty to examine the record for all evidence favorable to the plaintiff and all inferences which might reasonably be drawn therefrom, and to disregard all evidence which is unfavorable to him; and if there is any substantial evidence from which the jury could have found the result it did, our function in that respect is exhausted.[12] We do not find claimant's evidence to have been necessarily contradictory or self-destroying.[13] True, had we been the triers of the fact we might well have reached a contrary conclusion and have drawn contrary inferences,[14] but, there being substantial evidence from which the jury could reasonably have reached its verdict, the matter is out of our hands.

What we have said in regard to submissibility applies as well to the remaining contention that the verdict is excessive.[15] The amount allowed is in keeping with the claimant's evidence as to the number of hours worked (578) at the rate of pay ($1 per hour), minus the credits admitted and those payments shown by the evidence.

Since we find no error, the judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

10. Calvin v. Lane, Mo.App., 297 S.W.2d 572; Kasten v. St. Louis Public Service Co., Mo.App., 231 S.W.2d 252.

11. Blair v. Hamilton, Mo.App., 297 S.W.2d 14; R. J. Hurley Lumber Co. v. Cummings, Mo.App., 264 S.W.2d 379.

12. Gray v. Williams, Mo.App., 289 S.W.2d 463; Leathers v. Sikeston Coca-Cola Bottling Co., Mo.App., 286 S.W.2d 393.

13. See Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167.

14. See McDaniel v. McDaniel, Mo., 305 S.W.2d 461.

15. Thompson v. Healzer Cartage Co., Mo., 287 S.W.2d 791.