LEWIS P. PETERSON, Appellant, v. FLORA BLEDSOE, ESSIE STUBBLE-FIELD, LUTHER PALMER, BRYANT PALMER, STEVE PALMER, STELLA WILBURN, PEARL MILES, MILLARD REDMAN, WOODROW REDMAN, ETHEL JAMMERSON, OPAL LENNARD and MABLE WARD, Respond-ents, No. 42296—241 S. W. (2d) 375.

Division Two, July 9, 1951.

*Edward F. Sharp* for appellant.

*R. F. Baynes* for respondent.

BARRETT, C.—This action to establish a lost will was tried by the court. Upon the issue of whether the proffered instrument was the last will of the testatrix (Mo. R. S. 1949, Sec. 468.580) the trial court found that if the testatrix, Rosie Peterson, executed the will in which her former husband, the plaintiff, was the principal beneficiary that the will was not in existence at the time of her death and that she had destroyed it during her lifetime and thereby revoked it. Whether the trial court's finding and conclusion is justified by the evidence is the essential question upon this appeal by Mrs. Peterson's former husband.

At the outset we are confronted with two preliminary questions. It is first insisted that the judgment should be affirmed or the appeal dismissed because the appellant's brief does not contain a fair and concise statement of the facts without argument in violation of Rule 1.08. The appellant's statement does not comply with the rule but, as it will subsequently appear, since there is but a single issue which this court is required to consider, justice does not demand that the appeal be dismissed. Abernathy v. St. Louis Pub. Serv. Co., 362 Mo. 214, 240 S. W. (2) 914. The judgment was entered on the 20th day of July 1950 and the appellant's motion for a new trial was timely filed on the 28th day of July 1950, but the motion was not signed by the appellant or his counsel (Mo. R. S. 1949, Secs. 509.030, 509.280) until August 20th, 1950. It is urged, therefore, in the second place, that the motion was not timely filed and that there is nothing for this court to review. But the motion was not one required to be verified and the essential purpose of the motion was not defeated by the lack of a signature, in this instance a mere matter of form. Reamer v. Morrison Express Co., 93 Mo. App. 501, 67 S. W. 718; Mo. R. S. 1949, Sec. 509.280. Furthermore, this statutory law action, with some aspects of a suit in equity (Lilly v. Tobbein, 103 Mo. 477, 489, 15

S. W. 618), was tried by the court without a jury and it is the duty of this court to ▌ "review the case upon both the law and the evidence as in suits of an equitable nature" (Mo. R. S. 1949, Sec. 510.310(4) ), having due regard for the opportunity of the trial court to judge of the credibility of the witnesses. Consentino v. Heffelfinger, (Mo.) 229 S. W. (2) 546. And, as we have indicated, the sole question upon this appeal is the sufficiency of the evidence to support the trial court's judgment that the testatrix destroyed her will during her lifetime and thereby revoked it and died intestate.

▌ In June 1944 the plaintiff, Lewis P. Peterson, went to a lawyer's office in Caruthersville and had two wills drafted, one for himself in which his "beloved former wife" was the principal beneficiary and another for Rosie Peterson in which her "beloved former husband" was the principal beneficiary. Subsequently, according to the plaintiff's evidence, these wills were executed in Portageville where Mrs. Peterson lived. Mr. and Mrs. Peterson asked their neighbors, R. H. and Nannie Holdaway, to come over and witness the execution of the two wills. Thereafter Mrs. Peterson carried the two wills and some deeds around in her purse. When the wills were executed Mr. and Mrs. Peterson were not living together but Mr. Peterson had not then remarried. The Petersons had separate property, principally real estate, and in general the wills gave the survivor the property of the one to die first. There was no evidence, however, that the two wills were executed pursuant to a compact or agreement between the Petersons and they were not "mutual" wills. 69 C. J., Sec. 2714, p. 1297; Plemmons v. Pemberton, 346 Mo. 45, 139 S. W. (2) 910.

▌ The plaintiff proved that both wills were in existence, unrevoked, and in Mrs. Peterson's possession until a short time before her death. At various times she showed them to several people who read them and one witness testified that the will was in her possession in her purse unrevoked a day or two before she died. At least two witnesses said that they saw the will in her possession on Friday before she was found dead on the following Sunday. It is the plaintiff's theory that a person or persons with an adverse interest, one or more of the defendants, nieces and nephews, abstracted the will from her purse after her death and destroyed it and therefore it was not revoked by the testatrix. McClellan v. Owens, 335 Mo. 884, 74 S. W. (2) 570, 95 A. L. R. 711; Charles v. Charles, 313 Mo. 256, 281 S. W. 417; Mann v. Balfour, 187 Mo. 290, 86 S. W. 103; Hurwitz v. Lang, (Mo. App.) 224 S. W. 83. There is no dispute here concerning the applicable rules of law; it is the position of the plaintiff that there is no believable, substantial evidence that Rosie Peterson revoked her will. It may be assumed, as is the fact, that there was evidence in support of the plaintiff's theory of his case, but the principal difficulty with the plaintiff's argument is, as we have

indicated, that this case was tried by the court and there is substantial evidence in support of the court's finding and conclusion and it is not possible for this court upon this record to come to another and contrary conclusion. Ford v. Spiller, (Mo.) 241 S. W. (2) 1.

Mrs. Peterson was found dead in her bed by neighbors about 11:30 Sunday morning January 19, 1947. One of the neighbors who found her was her former husband's nephew, another was his wife and the other was a neighbor lady who lived across the street. Her relatives were called immediately and some of them arrived within ten or fifteen minutes and some of them did not arrive for several hours. The plaintiff's witnesses say that the relatives immediately began to inquire about her pocketbook and that some one of them found the key to her chiffonier, unlocked it and took her pocketbook from it and examined its contents. The undertaker testified that after he arrived someone gave him the pocketbook and he turned it over to the administrator. In any event after Mrs. Peterson's death her former husband's will and some other papers were found in her purse but her will was not found. Several of the defendants' witnesses testified that at various times Mrs. Peterson told them that she had destroyed her will, burned it. She always said in that connection that she did not want "the other woman" to get anything ▆ she had worked for. One of the witnesses, the neighbor lady who lived across the street, said that one afternoon in the fall of 1946 Mrs. Peterson called her over and after discussing the wills said, " 'now, you watch me and see what I am going to do with one of them, with the will I made to him,' and she opened the stove door and throwed it in the stove door. * * * She just said she had found out he cared more for the other woman than he did for her and she wasn't going to take it no longer." The plaintiff points to discrepancies and conflicts in the defendants' testimony, calling some of it "manufactured testimony," but there were likewise conflicts and discrepancies in the plaintiff's evidence.

Plaintiff's counsel contends that Mrs. Peterson was "madly in love" with her former husband, that she died loving him, and had neither reason nor motive for revoking her will, "although they had their little lovers' spats." But even in these circumstances, particularly in her state of mind, the trial court may have found some corroboration of the defendants' evidence and claim that Mrs. Peterson burned her will with the fixed purpose and intention of revoking it. When the wills were drafted and executed in 1944 Mr. Peterson had not then remarried even though he and Mrs. Peterson may have been divorced. There is some indication, however, that he was living with "the other woman." The date of his remarriage is not definitely fixed, but some time after the execution of the wills he did marry "the other woman." And Mrs. Peterson shot "the other woman" but failed to kill her. It would serve no useful purpose to detail and analyze all the conflicting evidence, "little lovers' spats" or not, it

is sufficient to indicate that the trial court's finding and conclusion that Mrs. Peterson's will was not in existence at the time of her death but had been destroyed and revoked by her during her lifetime is supported by such substantial evidence that the finding must be accepted by this court. Crampton v. Osborn, 356 Mo. 125, 201 S. W. (2) 336; Hamilton v. Crowe, 175 Mo. 634, 75 S. W. 389; 2 Page, Wills, Sec. 718, p. 387; McClellan v. Owens, supra.

Accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.