POST HILL HOMEOWNERS ASSOCIATION, INC., Appellant–Respondent,

v.

Stacy S. WHEELER, et al., Plaintiff; Gary and Sandy Kennell, Respondents–Appellants; and Betty Bennetzen, Respondent–Appellant.

Nos. WD 57375, WD 57411.

Missouri Court of Appeals, Western District,

Dec. 26, 2000.

Don A. Peterson, Kansas City, for Appellant.

Tim S. Harverty, Kansas City, for Respondent.

Before LOWENSTEIN, P.J., LAURA DENVIR STITH, and NEWTON, JJ.

NEWTON, Judge.

## Factual and Procedural Background

On January 3, 1987, Executive Hills North, Inc. (EHN) recorded the Post Hill Plat in Platte County along with a Declaration of Covenants Restrictions, Development Standards and Owner's Association for Post Hill, a Residential Townhouse Development at Executive Hills North (hereafter 1987 Declaration.) EHN was the original owner of all the Post Hill property, and owned it at the time it recorded the plat and 1987 Declaration. The 1987 Declaration covered all of the real estate located within the Post Hill Plat including the common areas and streets.

EHN built two townhouses on its property. One consisted of seven units located on Lot 4 and the other contained eight units situated on Lot 8. The townhouse situated on Lot 4 gives each unit owner access through the front door and through the garage, which is located behind the townhouse. All seven unit owners share a driveway which leads down to each unit's garage.

After the construction of these two buildings, EHN mortgaged all of Post Hill, including Lots 4 and 8, to Metro North State Bank (MNSB). Later, MNSB released four units in Lot 4, numbered 3, 4, 6, and 7, to EHN. The property release consisted of the surveyed description from foundation wall to foundation wall for each of the four units. The remaining units on Lot 4, including units 1, 2, and 5, which also contained surveyed descriptions from foundation wall to foundation wall, were still subject to MNSB's deed of trust. The remainder of Lot 4 including the common driveway, the streets and common areas extending out from the foundation to the boundary lines was also subject to MNSB's deed of trust; this is the disputed property in which unit owners, Gary and Sandra Kennell (the Kennells) and Betty Bennetzen claim they have an implied easement.

The units were subsequently transferred several times, but the only relevant transfer in this transaction took place when the Kennells and Betty Bennetzen, purchased their units in the Post Hill Property. The Kennells and Ms. Bennetzen owned units on Lot 4, units 3 and 2, respectively. Ms. Bennetzen purchased her unit on or about February 14, 1990, and the Kennells began living in unit 3 in June 1992. When Ms. Bennetzen purchased unit 2, the 1987 Declaration was effective. It gave her a means of ingress and egress to her unit through the common areas surrounding her unit, which included the streets, sidewalks, and driveway.

Then, on November 26, 1990, MNSB recorded a new 1990 Declaration substantially similar to the 1987 Declaration except that it excluded all seven units on Lot 4. The Post Hill Homeowners Association (the Association) was formed pursuant to the 1990 Declaration and excluded all seven units situated on Lot 4. Post Hill allowed the seven unit owners on Lot 4 to opt into the Association, but Ms. Bennetzen did not.

On or about March 1, 1992, Grayce E. Haning, Ms. Kennell's mother, purchased the Kennells' unit 3. The Kennells paid a portion of the purchase price. A warranty deed was granted Ms. Haning and duly recorded in Platte County in June 1992. The Kennells moved into the dwelling immediately thereafter. Later, on or about November 14, 1994, Ms. Haning transferred title to Unit 3 by quitclaim deed to the Kennells, which was recorded in Platte County. As noted, the Kennells' unit was not included in the 1990 Declaration. But upon purchasing their unit, they were not advised that, as a result, they did not have full and free access to their unit over any of the common areas within Post Hill, or that they would be required to pay for such access. Moreover, all of the streets, parking areas and sidewalks were constructed at the time they purchased the unit and the air conditioning unit and back porch were already in place. The streets,

easements, and common areas were reflected on the recorded Post Hill Plat, and the Kennells observed the existence of streets, common areas, parking areas, and sidewalks prior to purchasing their unit.

The Association owned the common areas within Post Hill and was responsible for maintaining the common areas. The Association also provided casualty and liability insurance for the units and its members had voting rights. The Association charged each unit owner one hundred dollars per month to cover the costs of maintenance and insurance. Although the Kennells and Ms. Bennetzen were not members of the Association, they contributed one hundred dollars per month to the Association to help with general maintenance. Ms. Bennetzen, however, ceased payments in May 1996 and the Kennells ceased payments in June 1996 because they were paying the same amount as the Association members without the benefit of receiving insurance coverage or voting rights.

After payments ceased, the Association filed suit against all Post Hill residents who were nonmembers and not compensating the Association for maintaining their common areas. The Association admitted that the Kennells and Ms. Bennetzen have access to and from their units through their garages over the connecting driveways as easements by necessity. It also admitted that they were allowed to travel freely on the private streets within Post Hill. The Association, however, claimed that they do not have a right to access their front door, back patio, the sidewalks, surrounding yards and other common areas within Post Hill.

The trial court granted Ms. Bennetzen and the Kennells'[1] summary judgment and held that they were not subject to the 1990 Declaration, and therefore, not members of the Association. Further, the trial court held that Post Hill is not responsible for maintaining or repairing the building on Lot 4 for those unit owners who are not members of the Association. The trial court found that the defendants owed the Association a usage fee of one hundred and fifty dollars ($150.00) per month since they ceased payments in 1996. Therefore, the trial court awarded judgment in favor of the Association and against the Kennells and Ms. Bennetzen in the amounts of $6,127 and $6,027, respectively. In addition, the trial court ordered the Kennells and Ms. Bennetzen to continue paying $150.00 per month to the Association as a usage fee so long as they have the rights of use to the common areas. Finally, the trial court granted the defendants an easement or license personal to them to make use and have the benefit of the common areas of the Post Hill Subdivision. This appeal followed.

The Association raised one point on appeal. It contends that the trial court erred in awarding the defendants a personal easement or license because their rights to gain access to their respective real estate could only be obtained by a statutory condemnation, which would allow them access to the private roads and their driveway currently owned by the Association.

The defendants raise three points on cross-appeal. First, they argue that the trial court erred by issuing them a license or easement because it was not supported by substantial evidence and it erroneously applied the law. Further, the trial court should have granted them a perpetual and irrevocable easement of access to all common areas in the subdivision, which would run with the land because: (1) the conveyance of their properties refer to a recorded plat indicating that all units within the plat had access to the common areas; (2) their property is landlocked creating an easement by necessity; and (3) the Association had actual and constructive knowledge of

---

1. The Post Hill Association named several defendants, but since then, they have either settled with the Association or joined the Association. This appeal focuses only on the Kennells and Ms. Bennetzen and their individual units.

the plat and was familiar with the physical situation of Post Hill, thereby estopping it from denying the easement.

Second, the defendants contend that the trial court erred by finding that they must pay a monthly usage fee of $150.00 to the Association because such a finding is not supported by substantial evidence, it is against the weight of the evidence, and it erroneously applies the law in that: (1) when there is an easement created by conveyance with reference to a recorded plat or by necessity, the easement runs with the land, the dominant tenant cannot charge a usage fee; (2) there is no authority for making a prospective award in quantum meruit; and (3) the evidence does not support the amount of $150.00 per month.

Finally, the Kennels and Ms. Bennetzen argue that the trial court erred in finding that the Association was entitled to an award of $6,027.00 from Ms. Bennetzen and $6,127.00 from the Kennells because it exceeded the amount the Association prayed for and includes interest, which the Association did not demand. Furthermore, it extends to a period of time for which the Association was not in possession of the common areas and did not confer any benefits upon the Kennells or Ms. Bennetzen. The amount also includes a period of time for which the Association agreed to and did accept a different amount, thereby estopping it from claiming recovery for additional amounts.

### Standard of Review

In reviewing a grant of summary judgment, we examine the entire record to determine whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law.[2] We will review the record in the light most favorable to the party against whom

summary judgment was entered.[3] We accord the non-movant the benefit of all reasonable inferences from the record.[4] The propriety of summary judgment is purely an issue of law.[5] Our review is essentially de novo.[6]

### Legal Analysis

■ The Kennels and Ms. Bennetzen claim that they should have either an implied easement or an easement by necessity. The trial court held that the Kennels and Ms. Bennetzen had an easement or license personal to them. The Association claims that the Kennels and Ms. Bennetzen were entitled to a statutory remedy, which would have allowed them access to the private roads and their driveways, or an easement by implication or necessity. Furthermore, it claims that the Kennells and Ms. Bennetzen have already obtained an easement by necessity because it allowed them access to their units through the garage across the driveway, and therefore, they are not entitled to an easement by necessity to the common areas which would give them an alternative means of ingress and egress to their unit through the front door. We hold that the Kennels and Ms. Bennetzen obtained an implied or visible easement to the common areas.

■ Implied easements require that: (1) there has been a unity of common ownership followed by a separation of title of the subject property into dominant and servient estates; (2) the common owner must have constructed, altered or artificially arranged the easement so that it constituted an open, obvious, and visible benefit or advantage to the claimant's property and a burden to the servient portion of the premises; (3) the easement must have been used long enough before the separation of title and under such cir-

2. *Dial v. Lathrop R–II School District*, 871 S.W.2d 444, 446 (Mo. banc 1994).

3. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

4. *Id.*

5. *Id.*

6. *Id.*

cumstances so as to show that the alteration or artificial arrangement was intended to be permanent; and (4) the easement must be reasonably necessary for the full beneficial use and enjoyment of the dominant estate.[7]

The Association argues that the Kennels and Ms. Bennetzen failed to establish the unity of prior ownership requirement. But the Kennels and Ms. Bennetzen contend, and the record indicates, that EHN previously owned all of the property in the Post Hill Subdivision. All parties stipulated to several facts on the record including the fact that EHN originally owned, platted and developed the subdivision, which was recorded on January 3, 1987. Furthermore, when EHN mortgaged all of the property to MNSB, it owned the entire parcel until it separated the property by conveying Units 3, 4, 6, and 7 on Lot 4 to EHN. These units were then conveyed to J.B.E. Irrevocable Trust #1 and later conveyed to Guarantee Bank. Units 1, 2, and 5 of Lot 4, as well as the common areas surrounding Lot 4 were owned by MNSB. This split the property and the title was separated. Therefore, the Kennels and Ms. Bennetzen have established the first factor.

Next, EHN constructed the driveway and streets when it built the townhouse on Lot 4 and since then has constituted an open, obvious, and visible benefit or advantage to the Kennels and Ms. Bennetzen's property and a burden to the Association's premises. Ms. Bennetzen testified that she had lived in her townhouse unit since 1989 as a tenant and the streets, driveways and sidewalks were already in place. Likewise, when the Kennells purchased their unit in 1992, the common areas were present and visible.

The third factor is also satisfied. When Ms. Bennetzen purchased her unit in 1990 she had been using the streets, driveway, sidewalks, and other common areas within the Post Hill Subdivision as a means of ingress and egress. Ms. Bennetzen testified that the building she lived in on Lot 4 was at least six years old when she rented it in 1989. EHN owned the building at that time. The streets and sidewalks were paved and were just as they appear today. The driveways were constructed and allowed access to the units through a garage from the rear. Ms. Bennetzen was not paying for their use at that time. When she purchased the unit in 1990 it was understood that she would have access to all the streets, the common areas, her driveway and her yard. The air conditioning unit was in its current location, which is on land owned by the Association. She was never told that she would have to pay for access to and from her unit. When the Kennells purchased their unit in 1992, the streets, driveway, and common areas were obviously already in place. They purchased the property under the assumption that they had free access to the unit from the front and the rear because the recorded plat conveyed an easement to the streets and the right to use and enjoy all walks, pavement, driveways, parking areas, entrances and exits owned by the Association by reference to the 1987 Declaration. No one informed them of anything to the contrary. Their air conditioning unit was also located on what the Kennells later discovered was the Association's property. Thus, these streets, sidewalks, and driveways were clearly meant to provide permanent access to the units both through the garage and through the front door. Further, because the air conditioning units were in place when the parties purchased the units, they are a permanent fixture to the structure and we will surmise that the common owner intended to permanently place the air conditioning units in their present location.

Finally, the fourth factor is also established. The easement is reasonably necessary for the full beneficial use and

7. *Hillside Development Co., Inc. v. Fields*, 928 S.W.2d 886, 889 (Mo.App. W.D.1996) (*citing* *Pendleton v. Gundaker*, 381 S.W.2d 849, 850 (Mo.1964) (other citations omitted)).

enjoyment of the Kennels and Ms. Bennetzen' estates. The Association argues that by allowing the residents access to the driveway, it is not necessary for the Kennels and Ms. Bennetzen to have an alternative access to their units. In order to establish an implied easement "one needs to show only reasonable, not absolute, necessity."[8] The policy behind this legal conclusion is that parties "contracted with a view to the condition of the property as it actually was at the time of the transaction and that after sale neither party has a right, without the consent of the other, to change to the detriment of the other, a condition which openly and visible exists."[9] Further, "the doctrine of visible easements looks at whether the easement is necessary to the *full* enjoyment of the dominant estate."[10] Without the easement, the Kennels and Ms. Bennetzen would not have access to their property from the front entrance. Although the Association has agreed to allow the Kennels and Ms. Bennetzen access to their unit through the garage by use of the driveway, it would be unreasonable to deny them access to their units through their front door. Typically, guests and the public enter a dwelling through the front entrance; without this easement, the Kennels and Ms. Bennetzen would be unable to step outside their unit onto their porch to greet or invite their guests inside. They would be unable to retrieve their newspaper and unable to plant vegetation or care for any area in their front yard because it is part of the common area in dispute. Therefore, the easement is necessary for the Kennels and Ms. Bennetzen full enjoyment of their property.

Based on the foregoing reasons, we agree that the Kennels and Ms. Bennetzen have an implied visible easement to the common areas surrounding their Lot, including the driveway, sidewalk, the area where their air-conditioning units rest, as well as all of the streets within the Post Hill Subdivision.

■ We now turn to the Kennels and Ms. Bennetzen' cross-appeal, which focuses on usage fees. The Kennels and Ms. Bennetzen are correct in asserting that they are not required to pay a fee for the use of their easements. But the Association can recover fees in quantum meruit for services rendered. The trial court awarded the Association $6,127.00 against the Kennells and $6,027.00 against Ms. Bennetzen for the benefit they received from the Association including: use of the greenway, sidewalks, private driveways, and air conditioner pads located on Lot 4 as well as the everyday maintenance and repair and other services provided by the Association. The trial court found that the Kennels and Ms. Bennetzen benefit was valued at $150.00 per month for a period of five years preceding the filing of the action to the date of the judgment with interest at nine percent, subject to the credit for any dues the Kennels and Ms. Bennetzen voluntarily paid within that period. The trial court also awarded future damages to the Association of $150.00 per month payable by each party for continued access to their driveway and for the benefits the Kennels and Ms. Bennetzen would continue to receive.

■ There are three elements in an unjust enrichment claim: (1) a benefit conferred on a plaintiff by a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the defendant's acceptance and retention of the benefit in circumstances that would render that retention inequitable.[11] When someone has been unjustly enriched at the expense of another, the beneficiary can be compelled to make restitution to the one conferring

---

8. *Id.* at 890.

9. *Id.* (*quoting Causey v. Williams,* 398 S.W.2d 190, 197 (Mo.App.1965)).

10. *Id.*

11. *Smith v. Smith,* 17 S.W.3d 592, 597 (Mo. App.W.D.2000).

that benefit.[12] The Kennels and Ms. Bennetzen received benefits from the Association without any accompanying detriment, while the members of the Association, who received the same benefits, compensated the Association by paying monthly membership dues. For instance, the Kennels and Ms. Bennetzen received the benefits of maintenance to the common areas including lawn care, tree trimming, snow removal, street lights, and garbage service. Consequently, the Kennels and Ms. Bennetzen recognize this inequity and have volunteered to reasonably compensate the Association for reasonable value of the benefits they received. Therefore, the trial court properly held that the Association was entitled to recover in quantum meruit from the Kennels and Ms. Bennetzen for services rendered.

The trial court, however, misapplied the doctrine of quantum meruit by obligating the Kennels and Ms. Bennetzen to make future payments to the Association. The doctrine of quantum meruit is to compensate one who has *conferred* a benefit to another.[13] Although our research has not uncovered any Missouri case law that expressly precludes a party from receiving an award for future damages under this doctrine, Missouri law has consistently and clearly identified the elements of the doctrine, and they were designed to compensate for past performances not for future anticipated performances.[14] Therefore, we reverse the trial court's award for future damages. This decision, however, does not prohibit the Association from bringing suit under the theory of quantum meruit in the future for benefits conferred on the Kennells and Ms. Bennetzen, should they decline to continue to voluntarily pay the reasonable value of the benefit conferred.

Furthermore, the trial court's assessment of a monthly fee of $150.00 was unreasonable in light of the evidence presented. Mr. Gary Bowling, director and treasurer of the Association, testified that the members of the Association paid $100.00 per month in dues and the Kennels and Ms. Bennetzen paid $100.00 for maintenance to the common areas prior to June 1996. Moreover, he testified that when the Association attempted to increase the dues to $150.00, the members protested. As a result, the Association agreed to continue charging $100.00. The Association also provided a swimming pool, liability insurance for the officers and directors, insurance coverage for the buildings and exterior building maintenance to its members. The Kennels and Ms. Bennetzen did not use the pool, their units were not covered by the insurance and the Association does not provide maintenance to the exterior of their units. Although we have held that it was proper for the trial court to assess a fee to the Kennels and Ms. Bennetzen for the benefits they received from the Association, it was unjust to require them to pay more than what the members of the Association paid because the benefits received were not equal. Therefore, it would be inequitable to require the Kennels and Ms. Bennetzen to pay $150.00 for less benefits than the Association members who receive more benefits but pay only $100.00.

In addition, the trial court erred in awarding damages five years preceding the filing of the petition. The petition was filed on September 22, 1997. Mr. Bowling testified that Post Hill did not own the Association until July 1994, and the Association conceded during oral argument that it was not entitled to fees before 1994. Thus, the Association was not entitled to compensation for benefits it did not confer.

12. *Petrie v. LeVan,* 799 S.W.2d 632, 634 (Mo. App. W.D.1990).

13. *Internat'l Materials Corp. v. Sun Corp., Inc.,* 824 S.W.2d 890, 895 (Mo. banc 1992); *see also Forry v. Dept. of Nat'l Res.* 889 S.W.2d 838, 847 (Mo.App. W.D.1994); *Kuczwara v. Cont'l Baking Co.,* 24 S.W.3d 712, 715–16 (Mo.App. E.D.1999).

14. *Id.*

Further, the Kennells and Ms. Bennetzen shall be credited the amounts they paid to the Association prior to the filing of the petition.

We reverse and remand the cause so that the trial court may determine a reasonable fee to compensate the Association for the benefits it conferred on the Kennells and Ms. Bennetzen between July 1994 and the date of the judgment, recognizing that these defendants did not receive benefits equal to the members of the Association, who paid $100.00 in membership dues, during that time.

Finally, the Kennells and Ms. Bennetzen claim that the trial court included the Association's attorney's fee for this litigation into its computation when it arrived at the $150.00 monthly usage fee as compensation for benefits the Association provided prior to the trial. This contention is based on an exhibit submitted by the Association, which outlines the expenses incurred by the Association related to Lot 4 since 1994. In the list of expenses, "legal fees—litigation related" is listed as an expense. The trial court's judgment is unclear as to whether or not it figured in attorney's fees as part of the usage fees. It expressly identifies each defendant in this lawsuit and makes a finding as to who is responsible for paying attorney's fees to the Association. It does make a finding that one party, who is not subject to this appeal, is responsible for attorney's fees, but in its judgment, the trial court states that no attorney's fees are awarded to any party and the parties shall bear their respective costs. Based on these inconsistencies, it is unclear as to whether Ms. Bennetzen and the Kennells were ordered to pay attorney's fees.

■ Since we are remanding for further proceeding on other issues, we offer the trial court guidance and urge it to address the issue of whether or not the Association is entitled to attorney's fees.

Generally, the trial court is not obliged to award a party attorney's fees absent a contract, statute allowing for the award, or in exceptional equitable situations.[15] An exceptional situation arises in "very unusual circumstances" where the court is asked to balance the benefits of the parties.[16] The trial court held that the Kennells and Ms. Bennetzen were not subject to or bound by the 1990 Declaration, which entitled the Association to reasonable attorney's fees and costs if it was the prevailing party. Therefore, the trial court must find that a statutory provision or very unusual circumstances existed that would entitle the Association to reasonable attorney's fees if it orders the Kennells and Ms. Bennetzen to pay them.

### Conclusion

The trial court's summary judgment is affirmed in part, reversed in part and remanded in part with instructions. We reverse the trial court's judgment entered in favor of the Association for an easement or license to the common area within the subdivision and remand the cause with directions for entry of judgment consistent with this opinion. We also reverse and remand with directions to the trial court to determine whether attorney's fees were recoverable. Further, we reverse and remand for the trial court to determine a reasonable monthly fee to compensate the Association for benefits conferred between July 1994 and the date of the judgment. Finally, we affirm the trial court's judgment on the Association's action in quantum meruit, but reverse as to the amount, and reverse the trial court's judgment as to future quantum meruit awards.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.

---

15. *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 89 (Mo. banc 1989).

16. *Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.,* 971 S.W.2d 302, 306 (Mo. banc 1998).