Mabel S. McCORMICK, Trustee, Appellant–Respondent,

v.

Larry L. CUPP, et ux., Respondent– Appellant.

Nos. WD 60508, WD 60509.

Missouri Court of Appeals, Western District.

June 10, 2003.

Mark J. Bredemeier, Lee's Summit, MO, for Respondent/Appellant.

Brian R. Hajicek, Columbia, MO, Wayne E. Schirmer, co-counsel, Moberly, MO, for Appellant/Respondent.

Before EDWIN H. SMITH, P.J., LOWENSTEIN and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

This appeal stems from a recent statutory provision that allows the judicial dissolution of a corporation with two equal shareholders who are unable to agree on the desirability of continuing the business of the corporation. Paraphrased, Section 351.467, RSMo 2000,[1] enacted in 1999, and set out in full in the Appendix to this opinion, provides: Where a corporation is owned equally by two shareholders, and when either of them can show the shareholders cannot agree as to continuing the business, then that shareholder can petition the circuit court to dispose of the corporate assets pursuant to an agreed upon plan and then to discontinue and dissolve the corporation. But if no plan can be agreed upon, this statute allows that shareholder to submit a proposed plan disposing of the assets along with a petition to the court, which is then required to either order a plan of discontinuance of business or sale of the business as going concern and then dissolve the corporation. The petition must recite that the other shareholder as well as the directors and officers of the corporation have been notified of the petition and its proposed plan.

1. All further statutory references are to the Revised Statutes of Missouri 2000.

Finally, where shares are owned by persons who are deemed related by the Internal Revenue Code, they are considered as one stockholder.

Section 351.467 has not been interpreted by an appellate court in this state. The petition here was filed by an aunt, Mabel McCormick, who, before becoming a shareholder, was called upon to guarantee bank loans to the corporation, Caraco, and, after being issued half the shares of stock, advanced over a half million dollars to the corporation. The corporation had been formed by the aunt's nephew, Larry Cupp, and his wife to develop and build a golf course. Together they retained a fifty percent share and managed the course. The two camps could not resolve differences. The aunt's petition was filed against the nephew and his wife. Caraco was dissolved, and the golf course was sold as a going business. The court prepared a plan of sale at auction. After paying costs and creditors, around $142,000 remained. The trial court divided the money equally, based on stock ownership. Both sides appealed asserting either their cash outlays or "sweat equity," bolstered by oral promises from the other shareholder that such contributions constituted capital advances or loans to the corporation, provided the foundation for receiving a greater portion of the remaining money. The judgment will be affirmed.

## I. Facts

The Cupps formed Caraco in March 9, 1992, to own and operate a golf course in Moberly. They were unable to secure financing to buy the land on which to build the course and to fund its construction, so Mr. Cupp went to his aunt, Mabel S. McCormick, for help. She agreed to guarantee loans to and a line of credit for Caraco on May 8, 1992, and March 25, 1993, respectively. On neither occasion was she a shareholder. Since Caraco's incorporation, McCormick advanced $525,058.72 to the company, and the Cupps advanced $231,811.92 to the company. Some advances were made after Caraco was administratively dissolved by the Secretary of State in October 1992.[2] There were no written memoranda of any agreement between the Cupps and McCormick to treat these advances as loans to Caraco.

In July 1993, the parties agreed to become equal owners of Caraco—the Cupps owning half and McCormick, as trustee for the Mabel S. McCormick Revocable Trust, owning the other half. Caraco authorized the distribution of shares, and its corporate charter was reinstated by the state. Mr. Cupp, Mrs. Cupp, and McCormick were each named officers and directors of Caraco. Á letter prepared by Ed Setzler, an attorney who helped facilitate the parties' agreement, stated that "all additional contributions after the $15,000 in stock issued to the two of you [meaning McCormick and the Cupps] will be treated as indebtedness from the corporation to you." Nothing in Caraco's minutes or by-laws indicated that Caraco agreed to treat the advances as shareholder loans. Nor did Caraco ever execute promissory notes to any of the parties reflecting any loan agreements, though Caraco's tax returns characterized the advances as loans.

The Cupps did a substantial amount of work building the golf course. After the course was completed, the parties had problems getting along, so they called in a consultant. His advice did not help, and in May 1999 McCormick filed this petition for

**2.** Caraco had failed to file its annual registration and franchise tax reports, sections 351.125 and 351.484(1) and (2).

dissolution of Caraco under section 351.467. Her petition initially included claims for breach of contract and fiduciary duty and a shareholder's derivative action, but these were voluntarily dismissed.[3] Under McCormick's dissolution plan (incorporated by reference in the petition), if a buyer could not be found, Caraco's assets were to be sold. The proceeds would first pay-off court costs and expenses, then bank loans, then "[a]ll other loans and indebtedness (other than shareholder loans and other claims of reimbursement of shareholders)[,]" and finally all shareholder loans *pro rata*. The remaining assets would be split equally, fifty percent for McCormick and fifty percent for the Cupps.

The Cupps did not accept McCormick's plan but agreed that Caraco should be dissolved. They counter-claimed for breach of contract, quasi-contract, and unjust enrichment, each claim requesting $300,000 in damages, plus interest and costs, and attorney's fees. The $300,000 represented the amount of the loan McCormick supposedly agreed to make to Caraco (after its administrative dissolution and before its reinstatement) "in exchange for crediting [the Cupps] with the value of their 'sweat equity' in the formulation, design, layout, construction, maintenance and supervision" of the golf course. The Cupps claimed that McCormick made the loan, that the Cupps built and ran the golf course, but that McCormick never caused Caraco to give them "credit" (a term the Cupps did not define) for their sweat equi-

ty, which the Cupps value at over $300,000.[4]

A buyer could not be found, so, in compliance with court order, Caraco's assets were sold for $594,0000 (to a company owned by McCormick). After Caraco's third-party creditors were paid, $142,203.86 remained. To restate, the thrust of the claims of both parties was how to distribute the remaining sum.

At trial, the Cupps did not introduce evidence of the value of their "sweat equity" nor of the number of hours they spent building the course. No expert testified as to the value of the golf course. The management consultant's report, which was introduced as an exhibit, estimated the Cupps' sweat equity at between $200,000 and $300,000, and a letter received from the United States Golf Association—another exhibit—valued the average golf course at between $1.5 and $2.5 million. The Cupps did not explain how McCormick, as opposed to Caraco, benefited from their labor or in what way they did not receive credit for their sweat equity. Mr. Cupp testified that he neither expected to be paid nor was paid a salary, and that the parties never memorialized the "sweat equity" agreement. Setzler testified that the primary reason to consider the parties' advances as debt was for tax benefits, not a true desire to treat them as actual debt.

At the conclusion of the bench trial, the trial court, noting that the parties had little regard for the legal formalities of

---

**3.** McCormick's undated motion to dismiss was signed by neither McCormick nor her attorney, but since the motion was not required to be verified and because the Cupps have not raised the issue of the propriety of the motion, there is no reason to question the validity of McCormick's voluntary dismissal. *See Peterson v. Bledsoe,* 362 Mo. 258, 241 S.W.2d 375, 375 (1951); § 509.280 (no signature requirement); § 510.130 (same). *Cf.*

§ 944 (1939) ("Every petition or other pleading and motion shall be signed by the party or his attorney. . . .") (current version at § 509.030).

**4.** Neither party claimed that any shareholder loans should have been re-paid *pro rata* along with the third-party bank loans and other corporate debts.

running a corporation, found against both parties. In fact, Caraco's minute books were incomplete and little attention has been paid to such matters as re-election of directors. The Cupps' unjust enrichment and quasi contract claims failed because, according to the trial court, if anyone benefited from the Cupps' labor, it was Caraco. The trial court concluded that it also failed because the Cupps, not having introduced any evidence of the value, reasonable or actual, of their sweat equity, failed to meet their burden of proof. Regarding the breach of oral contract counter-claim, the trial court found that the Cupps had not proven the existence of an agreement and, even if they had, McCormick kept her end of the bargain by loaning $300,000 to Caraco. "It is unclear," noted the trial court, "how [McCormick, as opposed to Caraco,] is at fault for [the Cupps'] failure to get credit for their sweat equity."

The trial court rejected McCormick's claim that the so-called "advances" she and the Cupps made to Caraco should be treated as corporate loans, not capital contributions, nor be repaid *pro rata* based on the respective debts outstanding. The court found that there was insufficient evidence to support McCormick's claim because: (1) there were no corporate minutes or Board resolutions or promissory notes acknowledging or treating the advances as debts; (2) the debts, if they existed, might be barred by the statute of limitations; (3) the advances were denominated debts in the parties' agreement for purposes of tax benefits only, as indicated by attorney Setzler's testimony; and (4) Caraco never authorized the money to be treated as debt. While the parties may have treated the advances as loans, the court concluded that it was not bound by their agreement in light of the foregoing *indicia* that the advances were capital contributions. Both McCormick and the Cupps appeal. The Cupps claim they were entitled to recover their "sweat equity" before the assets were split. McCormick claims that the loans she made to Caraco should, like the third-party loans, have been paid to her before a final asset distribution, or that the remaining assets should have been divided on the basis of the amount she "loaned" to the corporation as compared to the Cupps. Neither party is correct, and this court affirms.

## II. Standard of Review

The judgment in a court-tried case must be affirmed unless it is against the weight of the evidence, or there was insufficient evidence to support it, or it either misapplied or misconstrued the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). All evidence and reasonable inferences therefrom are read in the light most favorable to the judgment. *Evans v. Werle*, 31 S.W.3d 489, 491 (Mo.App.2000).

## III. Analysis

■ Traditionally, shareholders could not force the dissolution of a corporation without proving fault, broadly conceived, on the part of the directors—e.g., managerial deadlock, misapplication or waste of corporate assets, or "illegal, oppressive, or fraudulent" acts. *See* § 351.494(2). *See also* Jay Nathanson, Paul Klug & Mark A. McColl, *New Missouri Law Allows No–Fault Judicial Dissolution*, 56 J. OF Mo. BAR 251, 251–52 (2000). Where, however, a corporation has only two shareholders, each of which is a fifty-percent owner, and the shareholders are "unable to agree upon the desirability of continuing the business," either shareholder may have the corporation dissolved. § 351.467(1). Dissolution neither destroys the corporation nor extinguishes its debts; *Wartenbe v. Car–Anth Mfg. & Supply Co.*, 362 S.W.2d 54, 58 (Mo.App.1962). (Under the common law, the corporate assets escheated to the state

upon dissolution. *Bruun v. Katz Drug Co.*, 351 Mo. 731, 173 S.W.2d 906, 909 (1943)).

A dissolved corporation is a legal entity [5] with only one proper goal—to wind-up its affairs. § 351.476(1). Winding-up (a.k.a."liquidation") involves, first, collecting and liquidating assets (except those that will be distributed in-kind to the shareholders, assuming the corporate assets are sufficient to pay all creditors) for the purpose of paying its debts. *Id.* Second, all creditors, including shareholders (who may, e.g., have made loans to the corporation, 19 Am.Jur.2d § 2867 (1986)), are paid subject to their rights and priorities pre-dissolution; debts of the same priority are paid *pro rata. Id.;* 19 AM.JUR. 2d *Corporations* § 2863 (1986) 12B; WILLIAM FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, § 5739 (perm. rev. ed. 2002). Finally, all "remaining property [is distributed] among [the] shareholders according to their interests," *Id.,*—that is, their percentage ownership. *See* definition of "interest" in BLACK'S LAW DICTIONARY 816 (7th ed. 1999). In short, unless there is a shareholder or shareholder-corporation agreement to the contrary, shareholders, after all creditors are paid, are entitled to redeem their stock for liquidation dividends that are distributed *pro rata,* based on percentage ownership. 19 Am. Jur.2d § 2871 (1986).

McCormick and the Cupps both claim that a fifty-fifty division based upon stock ownership was inappropriate because there was a shareholder's agreement modifying the statutory scheme. The trial court did not err in concluding that both were mistaken.

**5.** This is in contrast to a corporation that has forfeited its corporate charter; it can neither sue nor be sued. *Multilist Serv. of Cape Gir-*ardeau, Mo., Inc. v. Wilson, 14 S.W.3d 110, 116 (Mo.App.2000).

## Cupps' Appeal

The Cupps argue that the trial court erred in splitting Caraco's remaining assets equally because, under the shareholders' agreement, McCormick promised to give the Cupps a $300,000 credit for their sweat equity, a promise that McCormick did not keep. Thus, McCormick was in breach of contract and also liable for unjust enrichment.

■ The trial court did not err in finding for McCormick on the unjust enrichment claim. There are three elements in an unjust enrichment claim: (1) conferral of a benefit on the defendant by the plaintiff; (2) defendant's appreciation of the fact of the benefit; and (3) defendant's acceptance and retention of the benefit in circumstances where retention is unjust. *Post Hill Homeowners Ass'n v. Kennell,* 39 S.W.3d 508, 514 (Mo.App.2000). As the trial court noted, any benefit from the Cupps labor redounded to Caraco's benefit. Caraco was not a named party, but the Cupps' counterclaim was against McCormick only. To recover from McCormick, the Cupps would have had to pierce the corporate veil, but they did not attempt to do so—and for good reason. As only a half-owner of Caraco, a non-majority shareholder, McCormick did not dominate (nay, could not have dominated) Caraco. Corporate domination by the defendant is necessary to pierce the corporate veil. *Sansone v. Moseley,* 912 S.W.2d 666, 668–69 (Mo.App.1995).

■ The Cupps rely on the United States Golf Association estimation that the value of the golf course lay somewhere between $1.5 and $2.5 million. But the Cupps, while referring to a letter containing this estimate, do not say that the ex-

hibit was admitted into evidence. Even if it had been admitted into evidence, they do not cite the page in the transcript indicating as much. If not introduced into evidence, an exhibit is not part of the record and normally cannot be considered on review. *See Moravac v. Dave Littleton Ford, Inc.,* 838 S.W.2d 151, 153 (Mo.App. 1992) (contract not admitted into evidence). Even if these two technical deficiencies were not present, the estimate was of limited importance, since it gives the price of an average golf course, and the Cupps do not refer to any evidence indicating their golf course was an average golf course. Yes, there was another report, which may or may not have been admitted into evidence, valuing the Cupps' equity at between $200,000 and $300,000, but the proper question in an unjust enrichment claim is the benefit conferred on the defendant, not the cost to the plaintiff. *Inauen Packaging Equip. Corp. v. Integrated Indus. Servs., Inc.,* 970 S.W.2d 360, 366 (Mo.App.1998).

■ Neither did the trial court err in finding against the Cupps on their breach of contract claim. It was McCormick's word against the Cupps'. Whom the trial court believed turned on relative credibility. The fact-finder is free to believe all, none, or some of a witness's testimony. *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). Where a case turns on the credibility of a witness, it cannot be reversed for insufficient evidence or for being against the weight of the evidence. *See Trimble v. Pracna,* 51 S.W.3d 481, 500 (Mo.App.2001). The trial court did not believe the Cupps.

There was, moreover, a sound basis for the trial court to disbelieve the Cupps. According to their testimony, an agreement involving hundreds of thousands of dollars was not reduced to a written memorandum. A reasonable person could find this highly unlikely. That McCormick contributed $300,000 to Caraco is some support for the Cupps' claim, but it equally supports McCormick's claim that she agreed to loan the company $300,000 in return for the Cupps' agreement to build and maintain the golf course (minus any "sweat equity" credit). This court must accept the latter inference. *See Werle,* 31 S.W.3d at 491.

■ Assuming, for the sake of argument, that there was an agreement, the trial court did not err in concluding that the Cupps had not proved their damages with reasonable certainty, a prerequisite for recovery for breach of contract. *Delgado v. Mitchell,* 55 S.W.3d 508, 512 (Mo. App.2001). The Cupps did not introduce any evidence of the value of their labor regarding how many hours they worked on or at the golf course, or the reasonable value of their time. No expert testified as to the value of the golf course they built. Nor did the Cupps explain why they equated the value of their sweat equity with that of the loan made by McCormick. Even if the Cupps had proved that their sweat equity was worth $300,000, they did not cite anything from the by-laws or articles of incorporation or any statutory authority entitling them to recover their capital contributions before liquidation dividends were issued. Without such authority, the Cupps could not prove any damages.

### McCormick's Appeal:

■ Underlying McCormick's argument is a misconception. A shareholders agreement, even if unanimous, usually does not bind the corporation unless the board of directors adopts it. § 351.310. A statutory exception for close corporations allows such corporations to do without a board of directors and be managed and controlled by the shareholders, *see* section

351.805.3(1), but only if the corporation elects to be treated as a close corporation in the articles of incorporation. *See* § 351.755. Caraco did not make this election. True, the parties' stipulation of the existence and amount of the loans binds them, *see Buckner v. Buckner,* 912 S.W.2d 65, 70 (Mo.App.1995). While McCormick did name Caraco as a party in her petition, there was no Board resolution acknowledging the loans or any corporate minutes referencing them.

 Corporations are bound by contracts entered into by its agents that have apparent, actual, or inherent authority to contract on the corporation's behalf. *Carter v. St. John's Reg'l Med. Ctr.,* 88 S.W.3d 1, 9 (Mo.App.2002); *Sturgeon v. State Bank of Fisk,* 616 S.W.2d 578, 583–84 (Mo.App.1981). A shareholder is not, however, *ipso facto* a corporate officer. It is possible that Mr. Cupp, as President, had inherent authority to enter into the shareholders agreement on Caraco's behalf. It is also possible that Caraco would be estopped to deny that the advances were loans because of its tax returns and because it retained the benefits of the loans. *See Mulco Prods., Inc. v. Black,* 127 A.2d 851, 856 (Del.1956). McCormick made neither argument, however.

Because Caraco was not liable on the loans and because McCormick dropped her breach of contract and fiduciary duty claims against the Cupps, making their liability under the shareholder's agreement a moot issue, McCormick's argument is unavailing.

The judgment of the trial court disposing of the assets of the basis of stock ownership is affirmed. Costs are to be divided equally.

All concur.

## APPENDIX

**351.467. Dissolution of corporation with two equal shareholders unable to agree on desirability of continuance of business.**

1. If the stockholders of a corporation of this state, having only two shareholders each of which own fifty percent of the stock therein, shall be unable to agree upon the desirability of continuing the business of such corporation, either stockholder may file with the circuit court in which the principal place of business of such corporation is located a petition stating that it desires to discontinue the business of such corporation and to dispose of the assets used in such business in accordance with a plan to be agreed upon by both stockholders or that, if no such plan shall be agreed upon by both stockholders, the corporation be dissolved. Such petition shall have attached thereto a copy of the proposed plan of discontinuance and distribution and a certificate stating that copies of such petition and plan have been transmitted in writing to the other stockholder and to the directors and officers of such corporation.

2. Unless both stockholders file with the court: (1) within ninety days of the date of the filing of such petition, a certificate similarly executed and acknowledged stating that they have agreed on such plan, or a modification thereof, and (2) within one hundred eighty days from the date of the filing of such petition, a certificate similarly executed and acknowledge stating that the distribution provided by such plan had been completed, the court shall dissolve such corporation and shall by appointment of one or more trustees or receivers, administer and wind up its affairs in a method intended to realize the maximum value for the stockholders, including the sale of the company as a going concern, if appropriate. Either or both of the

above periods may be extended by agreement of the stockholder, evidenced by a certificate similarly executed, acknowledged and filed with the court prior to the expiration of such period.

3. If, at any time within ninety days prior to the date upon which a petition is filed pursuant to subsection 1 of this section, shares of a corporation are owned by or for the benefit of persons who would be deemed related taxpayers for purposes of Section 267 of the Internal Revenue Code of 1986, as amended, or the regulations promulgated thereunder, then such shares shall be deemed owned by one stockholder for purposes of this section.